## HENDERSON v. UNITED STATES.

### No. 14208.

United States Court of Appeals
Fifth Circuit.

April 3, 1953.

Rehearing Denied May 8, 1953.

R. A. Wilson and Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, Tex., for appellant.

R. Daniel Settle, Sp. Asst. to U. S. Atty., Frank B. Potter, U. S. Atty., A. W. Christian, Asst. U. S. Atty., and Cavett S. Binion, Asst. U. S. Atty., all of Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

The indictment in this case contained 58 counts, five of which were dismissed by the court on motion of the Government. The jury found the defendant not guilty on six, and guilty on the others. The court sentenced the defendant to four years imprisonment on each of counts 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 14, 16, 17, 18, 19, 20, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 55, 56, 57, and 58, to run concurrently. It also fined the defendant $5000 on each of said counts 5 and 10, and imposed consecutive suspended sentences on counts 9, 12, 13, 27, 28, 29, 30, 31, 32, 33, 50, 51, 52, 53, and 54; the suspension being conditioned upon good behavior and payment of the fines. All of the counts charged that the defendant did willfully, knowingly, and unlawfully steal, conceal, remove, dispose of, and convert to his own use a described commodity (wheat or grain sorghum) which was then and there the property of the Commodity Credit Corporation, hereinafter referred to as the C. C. C. In each count the time and place of the particular offense and the quantity of grain were stated.

The indictment was drawn and the sentence pronounced under Section 714m(c), Title 15 of the United States Code Annotated, which provides that whoever shall willfully steal, conceal, remove, dispose of or convert to his own use or to that of another, any property owned or held by, or mortgaged or pledged to, said corporation, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both.

There were in evidence three storage agreements between C. C. C. and the appellant, doing business as the Henderson Grain and Seed Company, often referred to as the warehouseman. The last of these contracts was dated June 1, 1950, under the terms of which the appellant's storage facilities at Farwell and Lariat, Texas, became subject to a single storage agreement, and all grain of C. C. C. stored in either of said facilities was deemed to be commingled, and the warehouseman was obligated at his own expense to take all necessary steps to keep it in condition, and to condition any that was deteriorating, to the extent that he had the proper equipment. There was also evidence of actual commingling by transferring grain to and from each of these two storage facilities.

Not only was there ample evidence to show actual commingling of the Farwell and Lariat grain, but to warrant the jury in believing that the appellant commingled grain for which C. C. C. held 95% of the warehouse receipts with grain that appellant bought speculatively for his own account. His main defense before the jury was that, while he had breached a civil contract and was bankrupt, the Government

had failed to prove his criminal intent beyond a reasonable doubt. On that basis, his attorney asked the jury to return a verdict of not guilty. There was testimony in the record with reference to the appellant's good reputation, and the court charged the jury, in substance, that testimony of good reputation was to be considered along with the other evidence, and like other proof might serve to generate a reasonable doubt as to the defendant's guilt. This instruction was given at the request of the defendant, and its correctness is not challenged.

The appellant took the stand in his own behalf, and admitted that he was short, materially short, at the Farwell storage facilities, but claimed to have kept tonnage in other places to make up for it. He admitted that he failed to deliver to C. C. C. all the grain for which it held warehouse receipts, and was unable to deny that C. C. C. had paid him storage charges on grain that he did not have on hand. He admitted that, when he received a shipping order on Farwell, he would ship out of Farwell and Lariat at the same time to fill that loading order. In arguing to the jury upon the merits, the appellant's attorney said, tr. 577–579:

"True, when the banks were on him the last of October, 1951, he sold grain, and I have no doubt at all that the grain he sold at that time must have included some grain to which Commodity Credit had a claim, but you won't find in the court's charge anywhere a suggestion that he's entitled to be convicted by you because in October of 1951 he sold grain at that time to pay the banks to which Commodity Credit had a claim. You will find it quite clearly stated in the court's charge that your right to convict depends upon your own satisfaction beyond a reasonable doubt that at these particular dates involved in this indictment there existed on the part of Mr. Henderson the intent to deprive the Government separately of the value of these items. * * * You will find that statement in the court's definition of the term 'conversion.' You will find

that conversion as used in the criminal law doesn't mean just selling something or borrowing money on something that belongs to somebody else. It means doing it with the specific intention to deprive that somebody else of the value and substance of what is his. And absent that intention, you may have a conversion at the civil law, but not a conversion at the criminal law for which Mr. Henderson ought to be convicted. * * * Now that's the picture of the case, gentlemen, so far as the defendant is concerned. Breach of contract, yes; but proof of criminal intent, that proof there does not exist; and it's on that basis that I ask you gentlemen to return a verdict of not guilty."

On the question as to whether Henderson knew that he was converting C. C. C.'s grain-sorghum to pay off his debts, he stated that he had used some grain sorghum to pay off bank notes. Tr. 422–423: "Question: Yes, sir, but where was Commodity's grain sorghum when you were taking this other grain sorghum and paying off the bank, the bank notes you had been signing, where was that grain sorghum then? You said that was your grain sorghum you were using to pay off the bank. Where was Commodity's grain sorghum? Answer: Well, we just didn't have enough of it for —Question: Where was it, sir? Answer: We had paid off these bank notes. Question: Where was Commodity's grain sorghum at that time, Mr. Henderson? Answer: Well we had used some of Commodity's grain sorghum. Question: Used it for what, sir? Answer: In paying off some notes. Question: Whose notes were those you were paying off with Commodity's grain, please, sir? Answer: It was bank notes. Question: Your notes? Answer: It was bank notes. Question: Whose notes? Answer: Oh, yes, my notes."

This testimony of the defendant himself, together with much other evidence in the voluminous record before us, was amply sufficient to support the verdict. The charge of the court was not only free from prejudicial error, but was eminently fair to the appellant. We think he had an im-

partial trial before a good jury, who found him not guilty on six counts, and a just judge, who ably held the scales of justice evenly balanced through a long and arduous trial. The judgment appealed from is affirmed.

Affirmed.