Wayne S. MARTENEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 4930.

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1954.

Writ of Certiorari Denied

Feb. 28, 1955.

See 75 S.Ct. 442.

Emmet A. Blaes, Wichita, Kan. (A. Lewis Oswald, Hutchinson, Kan., on the brief), for appellant.

Richard J. Blanchard, Attorney, Department of Justice, Washington, D. C., for appellee.

Before HUXMAN, MURRAH, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The appellant, Wayne S. Marteney, was convicted and sentenced on all twenty-nine counts of an indictment which charged him with the theft and conversion of grain belonging to the Commodity Credit Corp., herein referred to as "CCC", in violation of 15 U.S.C.A. § 714m(c).[1] Appellant was sentenced to imprisonment for a period of five years on each count, all sentences to run concurrently. The first twenty-eight counts charged that the appellant "did unlawfully steal, conceal, remove, dispose of and convert to his own use and to that of the Garden Grain and Seed Company, Inc., Garden City, Kansas", various quantities of grain sorghum which was then and there property owned by the CCC, an agency and instrumentality of the United States. Each of the first twenty-eight counts was identical in form with the exception of the dates of the alleged offenses and the number of pounds of grain alleged to have been stolen and converted. The dates of the conversion alleged in each of the different twenty-eight counts were between September 11, 1951 and December 21, 1951. Count 29 alleged:

"During the period beginning from on or about April 1, 1950, to and including September 10, 1951, in the District of Kansas, the defendant, Wayne S. Marteney, did wilfully steal, conceal, remove, dispose of and convert to his own use and to that of the Garden Grain and Seed Company, Inc., Garden City, Kansas, grain sorghum in excess of 5,000,000 pounds, approximately 89,000 bushels, which said grain was then and there property owned by Commodity Credit Corporation, an agency and instrumentality of the United States."

■ The appellant by appropriate motions challenged the sufficiency of the first twenty-eight counts upon the ground that they failed to allege that the acts complained of were done wilfully. The motions were denied and that ruling is assigned as error. When "wilfullness" is made an essential element of an offense, as it is in this case, it is a general rule that a failure to allege wilfullness is fatal to the indictment. Fed.Rules Crim. Proc. rule 7(c), 18 U.S.C.A.; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516; United States v. Cook, 17 Wall. 168, 84 U.S. 168, 21 L.Ed. 538; Pullen v. United States, 5 Cir., 164 F.2d 756; Cf. Carter v. United States, 10 Cir., 173 F.2d 684, certiorari denied 337 U.S. 946, 69 S.Ct. 1503, 93 L.Ed. 1749; Lowenburg v. United States, 10 Cir., 156 F.2d 22; White v. United States, 10 Cir., 67 F.2d 71. We shall not, however, labor the point as it is conceded that count twenty-nine is sufficient and that the sentence imposed does not exceed that which might lawfully have been imposed under that count. It is well established that where a defendant has been convicted on several counts, a judgment and sentence will not be reversed if the sentence does not exceed that which might lawfully be imposed upon any one count. Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Brooks v. United States, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Evans v. United States, 153 U.S. 608, 14 S.Ct. 939, 38 L.Ed. 839; Ward v. United States, 10 Cir., 183 F.2d 270, certiorari denied 340 U.S. 864, 71 S.Ct. 87, 95 L.Ed. 631; Long v. United States, 10 Cir., 139 F.2d 652.

■ The evidence of the prosecution tended to establish that grain sorghum which belonged to the CCC and which was in storage facilities with grain of others was converted by the appellant.

---

1. This section provides:
"Whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the Corporation, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both."

It is urged that 15 U.S.C.A. § 714m(c) cannot be violated by the conversion of fungible goods from a commingled mass. The appellant was the vice-president and general manager of Garden Grain and Seed Company, Inc., a Kansas corporation, licensed by the State of Kansas to operate grain warehouse storage facilities at Pierceville, Garden City and Ingalls, Kansas. The CCC entered into grain storage agreements with the Company relating to grain of the CCC which was stored, and to be stored, in facilities at Garden City and Pierceville. The agreement provided that all grain sorghum covered by the contracts could be stored in a commingled mass. From April, 1950, through September, 1951, the total grain stored in these facilities belonging to CCC varied from 22.72 percent to 98.23 percent of the total amount stored. The storage facilities consisted of grain elevators and storage space at a United States Air Base near Garden City which had been leased from the United States. The CCC acquired its grain from farmers, under the price support provisions of the Commodity Credit Corporation Act. 15 U.S.C.A. § 714c. The grain was generally represented by warehouse receipts issued by the Company. The evidence is without conflict that the Company was short in its grain accounts from April, 1950 to September 10, 1951.[2] The evidence is also without dispute that the Company, at the direction of the appellant, sold warehouse receipts and delivered large quantities of grain to third parties during the period from April, 1950 through September 10, 1951, when it did not have in storage sufficient grain to meet the obligations of outstanding warehouse receipts. When CCC demanded delivery of grain represented by some of its warehouse receipts, the Company was unable to comply. The appellant admitted to an auditor that he knew he was short in the grain account and stated that he could obtain coverage elsewhere.

The prosecution made proof of the amounts of its grain which had been converted and sold, by showing deliveries by the Company when it was short of grain, and computing the interests of CCC according to the percentage of all grain in storage which it owned at the time of each delivery.

As was pointed out by the Supreme Court in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, conversion of government property ordinarily cannot be reached as an embezzlement, or a theft, or purloining, even though the loss to the United States has the same effect as though the property had been embezzled, stolen or purloined. The purpose of the conversion provision

2. An auditor for the CCC testified that an audit of the Company books showed CCC shortages from April, 1950 to September 10, 1951, as follows:

| 1950 | 1951 | Pounds |
|---|---|---|
| April | | 31,680,712 |
| May | | 31,680,712 |
| June | | 31,680,712 |
| July | | 31,680,712 |
| August | | 25,633,562 |
| September | | 18,777,448 |
| October | | 18,777,448 |
| November | | 15,715,558 |
| December | | 13,288,698 |
| | January | 13,050,258 |
| | February | 13,016,219 |
| | March | 13,016,219 |
| | April | 16,480,547 |
| | May | 15,794,107 |
| | June | 12,012,307 |
| | July | 12,012,307 |
| | August | 12,012,307 |
| | September (1 to 10) | 12,012,307 |

in the general statute was to provide a penalty not already covered by statute if property of the United States was knowingly converted. 18 U.S.C.A. § 641. The statute under which the appellant was indicted is part of the Commodity Credit Corporation Act, and its provisions and purposes are similar to the statute considered in the Morissette case but it applies only to property acquired under the Act. The principal difference in the two statutes is that in the general statute the offense is to "knowingly convert" property of the United States, while in the Commodity Credit Corporation Act it is to "wilfully convert" property of the CCC. The latter section denounces the wilful conversion of property acquired under the Act and the fact that this property was in a commingled mass and could not be specifically identified is immaterial, since the evidence established that the CCC owned a portion of the commingled mass of fungible goods which were wilfully converted. The appellant knew exactly how the grain was handled and could not have been misled or prejudiced by the method of proof. Shannon v. United States, 5 Cir., 209 F.2d 835, certiorari denied 347 U.S. 952, 74 S.Ct. 676; Henderson v. United States, 5 Cir., 203 F.2d 81; Dawson v. United States, 5 Cir., 203 F.2d 201.

The Warehouse Receipts Act of Kansas, Kan.G.S.1949, Ch. 82, Sec. 207, makes it a crime in Kansas for a warehouseman to issue warehouse certificates or receipts when the commodities described therein are not in fact in the building or buildings which it is certified that they are in; or to sell, transfer or remove from the building any of the certified property without the consent of the holder of the certificate or receipt. This section includes the acts prohibited by 15 U.S.C.A. § 714m(c), but acts denounced as crimes by both national and state sovereignties are an offense against both, and may be prosecuted by each. Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408; Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640; United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Serio v. United States, 5 Cir., 203 F.2d 576, certiorari denied 346 U.S. 887, 74 S.Ct. 144.

The appellant contends that the trial court's instructions to the jury contain several substantial errors. The first error complained of refers to the definition of the word "wilful". Wilful conversion as used in Section 714m(c), is a crime in the nature of a theft and falls within that class of cases requiring specific wrongful intent and a bad motive. Nabob Oil Co. v. United States, 10 Cir., 190 F.2d 478, certiorari denied 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 658. Considering the entire instruction on the subject, we think it was sufficient to properly define the term. The court explained to the jury that the simple conversion of property, though wrong, would not ordinarily be a crime. The jury was instructed that for a conversion to be a crime, it must be a wilful conversion and that it is dependent upon the intention with which it was committed. The court stated that the term "wilfully" as used in the statute meant "intentionally" or "with the purpose of". It was said to be an "attitude of mind and will and carries with it the thought of intentional ignoring of the law, or an indifference to its provisions". The jury was further told that to find that the appellant had converted property as charged in the indictment "you must find that his actions were willfull and intentional as distinguished from inadvertence and mistake". Although the jury was not told in so many words that the offense must be committed malevolently, with a bad purpose, or an evil mind, no other reasonable construction can be given to the language used.

It is contended that the court's instruction, which stated that the ownership and interest of the CCC in the grain for which it held warehouse receipts are fixed by the contracts entered into between the CCC and the warehouseman issuing warehouse receipts, and that the

appellant, as an officer and general manager of the Garden Grain and Seed Company, Inc., was bound by law to see to the enforcement of this contract, was erroneous. The contract provided that the warehouseman should at all times maintain in the warehouse sufficient quantity of grain to meet the obligations of the outstanding warehouse receipts. The instruction did no more than to state the source of the title of the CCC, and the conditions under which the grain was stored, together with the obligation of the appellant as one of the principal officers and general manager of the warehouse company. What constitutes a criminal conversion of the grain held under this contract and warehouse receipts obtained as grain is acquired is defined in other parts of the instructions which are not questioned. The contract provided the conditions upon which the grain owned by the CCC through warehouse receipts was to be stored and delivered, and the two instruments must be considered together. The appellant could not have been found guilty of a conversion of the grain held under the contract and the warehouse receipts by mere breach of the contract, but only for a wilful conversion. The reference to the contract provisions may not have been necessary, since the title to the grain would ordinarily follow the warehouse receipts, but such reference was not prejudicial to the appellant.

 In its instructions defining who is a principal to an offense against the United States, the court referred to 18 U.S.C.A. § 2. This section, as amended on October 31, 1951, reads:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Prior to amendment, this section read:

"(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

"(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

This is the section which was read to the jury. It is contended that the instruction did not correctly state the law and was prejudicial to the defendant because the word "wilfully" was omitted. The defendant made no objection to this instruction as required by Rule 30, Federal Rules of Criminal Procedure, 18 U.S. C.A., and may not now complain. Thayer v. United States, 10 Cir., 168 F.2d 247; Bartlett v. United States, 10 Cir., 166 F.2d 920; Berenbeim v. United States, 10 Cir., 164 F.2d 679, certiorari denied 333 U.S. 827, 68 S.Ct. 454, 92 L. Ed. 1113. In any event, we do not find the instructions as given to be prejudicial as the appellant admitted that he, better than anyone else, knew the financial condition of the Company and that it was his responsibility "to purchase and sell all grain handled by the corporation". The record shows that he exercised such responsibilities, although he may not have actually used a shovel or manipulated the loading machinery to transfer the grain for delivery.

 The appellant offered an instruction to the effect that there was no evidence showing that the CCC had ownership of any grain except such as had been commingled with stored grain in the warehouses. The offered instruction obviously had reference to the first twenty-eight counts. We think that considering the circumstances under which the shipments were made, the instruction was properly refused. The shipments were all made from a warehouse of the Company when it was short on its outstanding grain obligations. The appellant himself testified that the shipments

referred to in the first twenty-eight counts were made to various consignees, but that he did not know if they all came out of the commingled mass of grain in the warehouses. But there were circumstances from which this fact could be inferred. The instructions clearly left to the jury the question of the ownership of the grain alleged to have been converted. In any event, the instruction related only to the first twenty-eight counts, and if there was error, it was harmless, as the conviction on count twenty-nine must stand.

The final assignment of error is that the conduct of counsel for the United States before the jury was of such a character as to be prejudicial to the appellant. This contention is based upon the assertion that counsel for the United States injected into the proceedings on the cross-examination of the appellant, matters which were entirely collateral to the issues and highly prejudicial to him when argued to the jury. The cross-examination referred to consisted of questions relating to the purchase of an interest in a race horse by the appellant; sales of warehouse receipts to a particular purchaser for large quantities of grain, when the Company did not have such grain in its possession; and the expenditure of substantial sums of the Company's money for the use and benefit of the appellant personally.

The appellant took the stand in his own behalf and attempted to convince the jury that he had not wilfully done anything wrong. He testified that until a short time before the bankruptcy proceedings, he believed that the Company had sufficient grain to meet its liabilities, although some of it may have been out of position,[3] even though the Company's books were woefully inadequate to reflect this information. His testimony was that he never had any intention of doing anything illegal or wrongful. The cross-examination developed that the appellant had given a Company check to Oren Couch for Five Hundred Dollars. The check indicated on its face that it was in payment for grain. The appellant admitted that at about that time he had acquired an interest in a race horse with Couch and he would not say that it was not actually in payment for an interest in the horse. The other matters about which the appellant was questioned on cross-examination were the expenditure of Company funds to purchase a home and other property for the appellant, and to pay personal obligations in excess of $25,000. In view of the appellant's defense, these matters were clearly within the issues.

While cross-examination should be limited to matters brought out on direct examination and to subjects which are relevant to the issues, the purpose of cross-examination is to elicit the truth. For this purpose the examination of collateral matters rests largely within the discretion of the trial court, and its ruling will not be disputed unless it appears that there has been a clear abuse of this discretion and an injustice done. 58 Am.Jur., Witnesses, Sec. 624; Atkinson v. Atchison, Topeka & Santa Fe Ry. Co., 10 Cir., 197 F.2d 244; Williams v. Graff, 194 Md. 516, 71 A.2d 450, 23 A.L.R.2d 106. We find no abuse of discretion. We have carefully considered the appellant's contention of improper conduct on the part of government's counsel. While he may have overstepped the bounds to some extent in his argument to the jury, we feel that considering the record as a whole, in a case of this kind, there was no prejudice to the appellant. We also find after a careful examination, that there was ample evidence to sustain a conviction as to the twenty-ninth count.

Judgment affirmed.

3. "Out of position" is said to mean grain which may be used to meet outstanding obligations, although not stored in the place designated by the outstanding certificates.