**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Vincent RAY et al.,
Defendants-Appellants.**

**Nos. 73–2114 and 73–2115.**

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1974.

Decided March 31, 1975.

Grady E. Holley, Michael J. Costello, Springfield, Ill., for defendants-appellants.

Donald B. Mackay, U. S. Atty., Victor M. Pilolla, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and SOLOMON, Senior District Judge.*

FAIRCHILD, Chief Judge.

Defendants John Ray, Ronald Jackson, and James Barbee were each found guilty on counts charging them with receiving, concealing, and retaining (or with concealing and retaining) property of the United States with intent to convert it to his own use, knowing it to have been stolen. So described the offense was a violation of the second paragraph of 18 U.S.C. § 641.[1] On appeal defendants claim that they were convicted of offenses not charged in the indictments and also urge that other prejudicial errors occurred in the course of their prosecution.

I

The gist of the government proof was that butter, while the property of Commodity Credit Corporation,—an agency of the United States, 15 U.S.C. § 714,— was stolen from certain freight cars, and that defendants later possessed such butter with knowledge of its having been stolen and sold it for gain. Defendants argue that because the butter was the property of the Commodity Credit Cor-

---

* Senior District Judge Gus J. Solomon of the District of Oregon is sitting by designation.

1. § 641 Public money, property or records.

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

poration any offense proved against them was an offense under 15 U.S.C. § 714m(c) and accordingly that § 714m(e) rendered 18 U.S.C. § 641 inapplicable to their conduct. Defendants argue that dismissal would be appropriate. At the least, because of different provisions as to penalty, with a different pecuniary value controlling the grading of penalty, an adjustment of sentences would be necessary.[2]

15 U.S.C. § 714m(e) provides:

"All the general penal statutes relating to crimes and offenses against the United States shall apply with respect to the Corporation, its property, money, contracts and agreements, employees, and operations: *Provided,* That such general penal statutes shall not apply to the extent that they relate to crimes and offenses punishable under subsections (a), (b), (c), and (d) of this section: *Provided further,* That sections 431 and 432 of Title 18 shall not apply to contracts or agreements of a kind which the Corporation may enter into with farmers participating in a program of the Corporation."

The question thus becomes whether the defendants' conduct was punishable under one of the subsections of § 714m. Subsection (c) provides:

Whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the Corporation, or any property mortgaged or pledged as security for any promissory note, or other evidence of indebtedness, which the Corporation has guaranteed or is obligated to purchase upon tender,

shall, upon conviction thereof, if such property be of an amount or value in excess of $500, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, and, if such property be of an amount or value of $500 or less, be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or both.

◼  Focusing on this subsection's plain meaning, its language is sufficiently broad to encompass the acts which the jury must have concluded the defendants had performed. At common law conversion was defined as any act of dominion wrongfully exerted over another's personal property inconsistent with, in derogation of, or in defiance of the other's title or rights. 18 Am.Jur.2d Conversion § 1 at 158. The law, moreover, views the receipt of stolen goods as an act of conversion.[3] Absent a reasonable limiting construction, therefore, the knowing receipt and retention of Commodity Credit Corporation butter with intent to convert would be a willful conversion of the Corporation's property.

The government argues, however, that § 714m(c) is basically a larceny statute and that the scope of the statute is confined to those conversions resembling larceny. Contending that larceny and the receipt of stolen property have been traditionally treated as distinct offenses, the government concludes that the statute's prohibition of conversion does not apply to the receipt, concealment, and retention of stolen property and therefore that § 714m(e) does not preclude the defendants' indictment and conviction under 18 U.S.C. § 641.

---

**2.** The record indicates that the first time the possible conflict between the two statutes was brought out was in the government's answer to post trial motions. Apparently defendants' theory during trial was that the proof established that title had already passed from Commodity Credit Corporation (and therefore from the United States) at the time the theft occurred. The government has not argued, however, that defendants are foreclosed from making the argument on appeal. All three moved for judgment of acquittal at the close of all the

evidence, thereby challenging the sufficiency of the evidence. Rule 29(a), Fed.R.Crim.P.

**3.** 1 Restatement (Second) of Torts § 229 (1965), comments *d, e,* and *h,* at 447–49.

Criminal liability is, of course, not coextensive with tort liability. The reach of § 714m(c) is confined to only those conversions that are willful, precluding the punishment of inadvertent conduct. Marteney v. United States, 218 F.2d 258, 263 (10th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745.

At first glance the government's position is supported by reference to § 641. Like § 714m(c), § 641 prohibits conversion; but unlike § 714m(c), it goes on to prohibit the receipt, concealment and retention of stolen property. Following this analysis, Congress felt that § 641's proscription of conversion did not reach the crime of receipt of stolen property. This argument though ignores the genesis of § 641. That statute codified four previous statutes, one of which prohibited the receipt of stolen property. The term conversion was first introduced at the time of this codification to reach conduct that theretofore had not been prohibited but was offensive; namely, the misuse of property after its lawful procurement. *Morissette v. United States*, 342 U.S. 246, 271–72, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Historically, the prohibition of the receipt of stolen property was thus not introduced into § 641 because the latter prohibition against conversion was thought not to reach such conduct.

■ The genesis of § 714m(c), on the other hand, while not unambiguous, does not suggest that conversion, as used in that statute, excludes the receipt and retention of stolen property. Congress intended § 714m(c) to apply to all property "whether in the possession of the Corporation or not." 2 U.S.Code Congressional Service, 80th Cong., 2d Sess. (1948) p. 2154. Clearly Congress was not concerned with possession and how possession is achieved. More likely, its central concern was that Commodity Credit Corporation property should not be used in a manner inconsistent with the Corporation's ownership—an intention well in accord with a generous definition of conversion.

■ Finally, a broad reading of the term conversion avoids an unexplainable disparity in penalty. If the statute, § 714m(c), reached only the initial willful conversion of property, and not the willful receipt of the fruits of such conversions, those who stole or otherwise converted the property in the first instance would be subject to more lenient penalties.[4] No arguable reason is apparent for such disparity in treatment between the direct theft from Commodity Credit Corporation and receipt of stolen goods of the same owner, and we conclude that Congress did not intend such a result.

Accordingly, in our judgment, defendants' receipt and retention of stolen property constituted a willful conversion punishable under § 714m(c), and not an offense under 18 U.S.C. § 641, the statute referred to in the indictment and under which defendants were sentenced.

## II

We disagree, however, with defendants' claim that failure to name an offense under 18 U.S.C. § 641 required acquittal. Under Rule 7(c), Fed.R.Crim.P., an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." The rule further provides that the omission or error in the citation of a statute "shall not be ground for dismissal of the indictment or information or *for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.*" (Emphasis supplied.)

■ To determine whether defendants were prejudiced we first note the constitutional concerns that compel the indictment procedure: the Fifth Amendment's guarantee of the right to indictment by

---

4. If § 714m(c) does not apply to knowing recipients of willfully converted property, 18 U.S.C. § 641 would embrace such conduct. § 641 provides for a maximum fine of $10,000 and imprisonment for not more than ten years where the stolen property's value exceeds $100; where the stolen property's value is $100 or less, the maximum fine is $1,000 and the maximum imprisonment is for not more than one year. *See* note 1, *supra.* § 714m(c) provides, in contrast, that if the property is valued at more than $500, the maximum penalty is a fine of $10,000 or five years imprisonment or both; if the property is valued at $500 or less the maximum sanction is $1,000 fine or one year in prison or both. Hence, the penalties of 15 U.S.C. § 714m(c) are more lenient than those found in the general penal statute, 18 U.S.C. § 641.

a grand jury and its double jeopardy bar and the Sixth Amendment's guarantee that a defendant be informed of the charge against him. At a minimum these guarantees require (1) that an indictment adequately apprise a defendant of the charge against him so that he can prepare his defense and (2) that if future proceedings are brought against the defendant for a similar offense, the record shows to what extent the defense of double jeopardy is available. Russell v. United States, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); U. S. ex rel. Harris v. State of Illinois, 457 F.2d 191, 197 (7th Cir. 1972), cert. denied, 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106; United States v. Bearden, 423 F.2d 805, 810 (5th Cir. 1970), cert. denied, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68.

The indictments here alleged the dates each defendant was claimed to have received, concealed, and retained (or concealed and retained) the stolen butter, the amount of the butter so possessed and the defendants' knowledge that it had been stolen. The conduct described amounted to conversion. The fact that the offense was described in the language of § 641 rather than the language of § 714m(c) does not matter if, as here, the substance of the crime is the same.

The indictment alleged the butter was the property of the United States. It was proved to be the property of a particular agency of the United States. Because that agency was the Commodity Credit Corporation instead of some other federal agency, § 714m applied rather than § 641. At trial defendants virtually conceded that the butter had been the property of Commodity Credit, and their defense was that title had passed from Commodity Credit before the theft. Clearly the failure to allege that the butter belonged to Commodity Credit did not prejudice defendants by failing to give them notice of a factual claim they might have disputed.

■ And the record so clearly shows that Commodity Credit was the particular agency of the United States which owned the butter that defendants are in

no real danger of second jeopardy on a charge of willfully converting property of the Commodity Credit Corporation. Defendants "could rely upon other parts of the present record [other than the indictment] in the event that future proceedings should be taken against them. See McClintock, Indictment by a Grand Jury, 26 Minn.L.Rev. 153, 160; Bartell v. United States, 227 U.S. 427, 433, 33 S.Ct. 383, 57 L.Ed. 583." Russell v. United States, supra, 369 U.S. at 764, 82 S.Ct. at 1047.

■ Finally, defendants have failed to show prejudice. "The fact that the wrong section of the statute was cited does not invalidate either the charge or the convictions if, as here, no prejudice is shown to derive from the miscitation." United States v. Calabro, 467 F.2d 973, 981 (2d Cir. 1972). We find no possibility of prejudice here. There is no suggestion that the substance of the trial would or could have been any different if the indictment had referred to § 714m(c).

In our judgment neither the allegation that the property belonged to the United States nor the citation of the statute that proved to be inapplicable resulted in a sufficient variance between the indictment and the proof so that defendants were tried without being charged by a grand jury. Cf. Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); Williams v. United States, 168 U.S. 382, 389, 18 S.Ct. 92, 42 L.Ed. 509 (1897).

### III

Defendants make a number of additional arguments for reversal. We conclude they have no merit. Our disposition of each of them is set forth in a memorandum order subject to Circuit Rule 28, filed at the same time as this opinion and furnished to counsel. Decision of those matters lacks sufficient precedential value to be reported.

### IV

■ Our conclusion that the offenses proved were violations of 15 U.S.C.

§ 714m(c) and not of 18 U.S.C. § 641 requires that the sentences under § 641 must be vacated and the cause remanded for resentencing. On the counts where the prosecutor thought he had proved value of more than $100, the jury was asked to make that finding. The critical value for the purpose of sentencing under § 714m(c) is $500. The jury was not asked to make any finding as to that value, and the sentences imposed exceeded those authorized by § 714m(c) where the value is $500 or less. Since the government was responsible for prosecuting the defendants as if § 641 were applicable, and for the failure to submit the proper question of value, we think defendants should be sentenced as if the value on any count were $500 or less.

Accordingly, the sentences are vacated and the causes remanded for sentencing of defendants under 15 U.S.C. § 714m(c), the value in each count being $500 or less. Treating the convictions as being under 15 U.S.C. § 714m(c), they are affirmed.