**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James P. WISNIEWSKI, Defendant-Appellant.**

**No. 84–1089.**

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1984.

Decided Aug. 10, 1984.

Rehearing Denied Oct. 1, 1984.

David Paul Allen, Hammond, Ind., for defendant-appellant.

Scott L. King, Asst. U.S. Atty., R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before BAUER and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge.*

COFFEY, Circuit Judge.

Appellant, Wisniewski, was convicted after a jury trial of possessing with intent to distribute Diazepam, a Schedule IV controlled substance, and Cyclohexamine, a Schedule I controlled substance, all in violation of 21 U.S.C. § 841(a)(1) (West 1981). Wisniewski challenges his convictions alleging that (1) cyclohexamine is not proscribed as a controlled substance in 21 Code of Federal Regulations, § 1308.11(d)(22) (1984); (2) the trial court erroneously curtailed the defendant's cross-examination of an expert witness; and (3) an eyewitness's out-of-court and in-court identifications were erroneously admitted following a suggestive identification procedure.[1] We affirm.

I.

On June 25, 1983, at the Lake Michigan beach area of the Dunes National Lakeshore, near Gary, Indiana, Wisniewski approached James Pickford and stated, "Quaaludes, tick or Columbian, I've got them all." Pickford declined the drugs offered and Wisniewski walked away. During this encounter of about ten seconds, Pickford noted that Wisniewski was approximately six feet tall, had shoulder-length brown hair, and was wearing mirrored sunglasses and a red bandana.

---

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. Wisniewski's brief raised six issues, two of which he admitted were waived for purposes of this appeal in his Reply Brief. We find two of the four remaining issues indistinguishable. Specifically, Wisniewski presented issues of "whether the substance cyclohexamine is proscribed as a controlled substance by the Code of Federal Regulations section 1308.11(d)(22)" and "whether Count II of the indictment stated an offense by alleging the possession of cyclohexamine with intent to distribute the same." We treat these two issues as the same because, if we determined that cyclohexamine was not a controlled substance, Count II necessarily would fail to state an offense. We have searched appellant's brief in vain to find an argument which distinguishes these issues.

After Wisniewski left, Pickford followed him down the beach until he sat down next to an ice cooler. Pickford then approached the lifeguards on the lakeshore and reported the attempted sale of drugs. Pickford described Wisniewski to lifeguard Ralph Mundt and to Mundt's partner, Greg Ellis, and pointed him out to them. Pickford viewed Wisniewski with binoculars while on the lifeguard stand for fifteen to twenty seconds. After descending from the stand, Pickford walked in front of Wisniewski and observed him for a third time.

Mundt notified the park rangers about the attempted drug sale by radio and, along with Ellis, continued to watch Wisniewski. While waiting for the rangers to arrive, both Mundt and Ellis observed Wisniewski approach other park visitors, produce a pill bottle, and receive money while handing over something from the bottle. Ellis and Mundt observed Wisniewski return to the location on the beach where Pickford had first pointed him out.

Shortly thereafter, Park Ranger John Cannon came to the lifeguard tower. Mundt and Ellis explained their suspicions to the Ranger, informed him of their observations, and pointed out Wisniewski. Cannon observed Wisniewski both with and without binoculars for about fifteen minutes. During this period, he saw Wisniewski converse with passers-by on the beach and display to them the contents of a black bag.

When Cannon and several other rangers approached Wisniewski on the beach, a woman approached Wisniewski from behind and their hands appeared to meet. Cannon, who saw the hand-off, grabbed the woman's wrist and a vial containing several tablets and a tinfoil pouch fell to the beach. The officers opened Wisniewski's black bag and discovered marijuana.[2] Cannon handcuffed Wisniewski and took him to a squad car. Another ranger contacted Pickford and brought him to the squad car where Pickford was questioned as to whether Wisniewski was in fact the same person who earlier had offered to sell him drugs.

Pickford identified him as the man who had offered him drugs some one to one-and-a-half hours earlier.

Before trial Wisniewski filed motions to dismiss Counts I and II of the indictment arguing that neither Diazepam nor Cyclohexamine were controlled substances, that the indictments "thus failed to give the defendant adequate notice of the charge," and that the indictments failed to state an offense. After the Government pointed out that both Diazepam and Cyclohexamine are listed as controlled substances in the C.F.R. Wisniewski argued that Cyclohexamine was not specifically listed as a controlled substance but "is merely suggested as one of many aliases of the proscribed substance." Wisniewski further argued that "[a]lthough we might infer that *some* ethylamine analog of phencyclidine is cyclohexamine, left open is the question of whether *all* cyclohexamine is an ethylamine analog of phencyclidine." "[A] judge or lawyer cannot deduce [Cyclohexamine is absolutely identical to the proscribed analog] from the mere language of 21 C.F.R. § 1308.12(d)(22)." Wisniewski also argued that, because the government had failed to list the relevant regulations proscribing Diazepam and Cyclohexamine it had "caused the defense to endure the embarrassment of having overlooked cyclohexamine in its less-than-conspicuous position as a suggested fourth (4th) alias of the ethylamine analog of phencyclidine" and had failed to provide the notice required by Fed.R.Crim.P. 7(c)(1).

Relying on Fed.R.Crim.P. 7(c)(3) and our decision in *United States v. Ray*, 514 F.2d 418, 421–22 (7th Cir.1975), *cert. denied*, 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123, the district court rejected Wisniewski's claims that the indictment did not give proper notice by noting that it is the statement of facts, rather than the statutory citation, which charges an offense. Furthermore, because Wisniewski did not demonstrate that the omission misled him to such a degree that it prejudiced him, dismissal

---

**2.** Wisniewski was acquitted of possession of marijuana with intent to distribute.

would be improper.[3] The district court also held that "the regulatory language of Schedule I clearly designates that cyclohexamine is an ethylamine analog of phencyclidine which is a proscribed hallucinogenic substance and not a mere 'alias' for the same as the defendant claims. The defendant's statement that '[w]hile a chemist might be able to claim that cyclohexamine is absolutely identical to the proscribed analog, a judge or lawyer cannot' is, at best, an issue of fact which is more appropriate to argument at trial than in a motion for dismissal of the indictment."

At trial Wisniewski argued that Pickford should not be allowed to identify him in court because his out-of-court identification at the squad car was overly suggestive. After the jury was excused, Pickford was questioned on how long and how closely he had observed the defendant and how much time had passed between his encounter with Wisniewski on the beach and observing him in the patrol car. Wisniewski's attorney asked Pickford if he could have picked Wisniewski out of a crowd of people if he had not seen him in the squad car or the courtroom. Pickford responded that he did not know. The trial court, after considering and weighing all of the evidence including Pickford's three observations of the Defendant, stated that he was satisfied that Pickford had ample opportunity to observe Wisniewski before the squad car incident and thus that his identification was proper. The court found that the Defendant had failed to meet the threshold test of establishing that there was a substantial likelihood of irreparable misidentification of Wisniewski and allowed Pickford to identify him in the presence of the jury.

During his cross-examination of the government's expert witness on chemical and analytical toxicology, Wisniewski's attorney attempted to explore the question of whether cyclohexamine is an ethylamine analog of phencyclidine. Responding to the defense counsel's questions, the wit-

ness testified that cyclohexamine was one precise compound, also known as N-ethyl-l-phenylcyclohexamine, and is identical to the ethylamine analog of phencyclidine. The witness explained that he had listed the drug taken from Wisniewski both as cyclohexamine and as N-ethyl-l-phenylcyclohexamine so there would be no confusion. When defense counsel attempted to question the witness about the chemical structures of cyclohexamine and the ethylamine analogue of phencyclidine, the court cut-off cross-examination because the witness already had testified that the terms were identical. The defense did not produce evidence in rebuttal of the expert witness' testimony. The court took judicial notice of the listings of marijuana, Diazepam and Cyclohexamine as controlled substances in 21 C.F.R. § 1308.11 Schedule I and 21 C.F.R. § 1308.14 Schedule IV.

## II.

■ Initially, we turn to the question of whether cyclohexamine is a Schedule I controlled substance. Our reading of the relevant statutes and regulations reveals that Schedule I clearly designates that cyclohexamine is an ethylamine analog of phencyclidine. The defendant has presented no evidence to question much less discredit this conclusion.

Pursuant to 21 U.S.C. § 811 (West, 1981), the Attorney General specifically is authorized to add drugs to the list of controlled substances and to reclassify drugs. To reclassify a drug as a Schedule I controlled substance, the Attorney General must find that: (1) the drug has a high potential for abuse; (2) the drug has no currently accepted medical use in treatment in the United States; and (3) there is a lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1).

Phencyclidine originally was listed as a Schedule III drug in 21 U.S.C. § 812 Schedule III (b)(7). On August 11, 1978, the Director of the Drug Enforcement Admin-

---

**3.** To the extent that Wisniewski's Statement of the Issues on Appeal renews this notice argument in this court, we reaffirm our holding in

*Ray* and concur with the district court that dismissal is inappropriate for the failure to demonstrate prejudice.

istration, acting for and on behalf of the Attorney General,[4] made findings that N-ethyl-l-phenylcyclohexamine, an analog of phencyclidine, had a high potential for abuse, had no currently accepted medical use in treatment in the United States, and lacked accepted safety for use under medical supervision in the United States. 43 Fed.Reg. 35,734 (1978). The record fails to disclose that any comments, much less objections, were received to the proposed transfer and on September 25, 1978, in 43 Fed.Reg. 43,295 (1978), 21 C.F.R. § 1308.11 was amended to read in pertinent part:

"(d) Hallucinogenic substances, * * *

(21) Ethylamine analog of phencyclidine .... 7455

Some trade or other names: N-ethyl-l-phenylcyclohexylamine, (l-phenylcyclohexyl) ethylamine, N-(l-phenyleyclohexyl) ethylamine, cyclohexamine, PCE."

* * * * * *

We conclude that cyclohexamine is indeed a Schedule I controlled substance and that the trial court did not err when it took judicial notice of the same. *Cf. United States v. Dolan,* 544 F.2d 1219, 1223 n. 8 (4th Cir.1976) (taking judicial notice that phencyclidine commonly is known as PCP); *United States v. Van Buren,* 513 F.2d 1327 (10th Cir.1975) (judicial notice of the fact that cocaine hydrochloride is a controlled substance even though it was not listed by that name in the statute). Wisniewski's objection, which he failed to substantiate by presenting evidence is at best the result of confusion caused by the possibly questionable judgment of the crime lab chemist in listing the drug both as cyclo-

hexamine and as N-ethyl-l-phenylcyclohexamine and is without merit.

Wisniewski's objection to the court's terminating his questioning of the expert witness likewise is without merit. The right to unbridled cross-examination of an adverse witness is not absolute and a trial judge has considerable discretion to place restrictions on the scope of cross-examination once the right to confront witnesses has been substantially exercised. *United States ex rel. Scarpelli v. George,* 687 F.2d 1012, 1014–15 (7th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). Limiting the trial judge's discretion to restrict the scope of questioning would give defense counsel unrestricted license during cross-examination to ask endless, repetitive or irrelevant questions which might confuse the jury as well as unnecessarily prolong the litigation. *Id.* The thrust of defense counsel's argument was the Cyclohexamine was not an ethylamine analog of phencyclidine. Once the witnesses had testified that they were identical, further questioning of the witness on that point was obviously repetitive. In light of the witness' several statements that cyclohexamine is an ethylamine analog of phencyclidine, the trial judge did not abuse its discretion by sustaining the government's objection to this repetitive and potentially confusing questioning.

### III.

Our final inquiry is whether the district court erred in allowing the in-court identification of Wisniewski. Wisniewski,

---

**4.** The Attorney General is not required to act personally to reclassify a drug. *See United States v. Benish,* 389 F.Supp. 557, 558 (W.D.Pa. 1975), *aff'd.,* 523 F.2d 1051 (3d Cir.1975), *cert. denied,* 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1976); *United States v. Roya,* 574 F.2d 386, 392 (7th Cir.1978). The Director's authority is established by 21 U.S.C. § 871, 28 U.S.C. § 509 (Reorganization Plan No. 2 of 1973); and Section 0.100 of Title 28 C.F.R. which provides:

"§ 0.100 *General functions.*

"The following-described matters are assigned to, and shall be conducted, handled, or supervised by, the Administrator of the Drug Enforcement Administration:

"(a) Functions vested in the Attorney General by sections 1 and 2 of Reorganization Plan No. 1 of 1968.

"(b) Functions vested in the Attorney General by the Comprehensive Drug Abuse Prevention and Control Act of 1970.

"(c) Functions vested in the Attorney General by section 1 of Reorganization Plan No. 2 of 1973 and not otherwise specifically assigned."

[Order No. 520–73, 38 FR 18380, July 10, 1973, as amended by Order No. 960–81, 46 FR 52348, Oct. 27, 1981].

raising a "fruit of the poisonous tree" issue, argues that the squad car show-up was unnecessarily and prejudically suggestive, tainting the subsequent in-court identification testimony by the witness James Pickford. Although the government concedes that the show-up at the beach may have been unduly suggestive, it argues that the in-court identification stems from a source independent of the show-up. After reviewing the record, we cannot say that the district court was in error in finding that there was no substantial likelihood of irreparable identification, *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), thus finding that the in-court identification was proper and would be received in evidence.

This court recently has explained both the test to be followed when deciding whether to allow an in-court identification after a challenged suggestive pre-trial confrontation and the policy which governs that test:

"A pretrial confrontation conducted in a manner which is 'so unnecessarily suggestive and conducive to irreparable mistaken identification' denies an accused due process of law, *Stovall v. Denno*, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), and a subsequent in-court identification is inadmissible if there is a 'very substantial likelihood of irreparable misidentification,' *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). Even though the identification procedures are suggestive, however, 'the central question [is] whether under the "totality of circumstances" the identification was reliable....' *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *see also Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In assessing the totality of the circumstances, we consider three interrelated factors: whether the procedures used were suggestive, whether exigent circumstances justified the use of the suggestive procedure, and whether the in-court identification was reliable despite any suggestiveness.

*United States v. Cord*, 654 F.2d 490 (7th Cir.1981); *United States ex rel. Kirby v. Sturges*, 510 F.2d 397 (7th Cir.1975).

\*　　\*　　\*　　\*　　\*　　\*

"Under *Manson*, an identification engendered by a suggestive and unnecessary procedure may still be admitted if it is adequately reliable—based on the witness' mental imprint of the accused formed at the time of the crime, and unaffected by any observations, promptings or suggestions at the legally impermissible confrontation. The relevant factors in evaluating reliability are: 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' *Neil v. Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382; *accord Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253.... [When the suggestiveness has been conceded], the government bears the burden of proving by clear and convincing evidence that the in-court identification was based upon observations of the suspect other than at the prior, illegal identification, *United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967), or, alternatively, of proving 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)."

*United States ex rel. Hudson v. Brierton*, 699 F.2d 917, 923, 924–25 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 114, 78 L.Ed.2d 115. After applying the *Biggers/Manson* criteria, we cannot say that the district court's finding of reliability by clear and convincing evidence is clearly erroneous.

The evidence clearly established that Pickford not only had an opportunity to observe Wisniewski but also that Pickford

paid very close attention to the appellant. First, Pickford observed Wisniewski face-to-face for ten or fifteen seconds when Wisniewski accosted him and attempted to sell him drugs. After following Wisniewski down the beach, Pickford viewed Wisniewski with binoculars for fifteen to twenty seconds from the lifeguard stand. Finally, after leaving the stand, Pickford proceeded to walk in front of Wisniewski to closely observe him for a third time. Further the evidence independently established that Pickford's prior description of Wisniewski was accurate. On two occasions, first to the lifeguards and later to Ranger Cannon, Pickford described Wisniewski as approximately six feet tall, with shoulder-length brown hair, wearing mirrored sunglasses and a red bandana. Cannon testified that the person whom he arrested with drugs in his possession matched Pickford's description. Also, Pickford was certain of his identification of Wisniewski at the time of the squad car show-up. Ranger Cannon, who was present when Pickford was shown Wisniewski in the squad car, also testified that Pickford positively identified Wisniewski at that time without hesitation. Finally, the show-up occurred while the memory of the initial contact was fresh in Pickford's mind; only an hour and a half had passed.

Against the weight of this evidence Wisniewski proffers Pickford's inability to answer his hypothetical question of whether he could have picked Wisniewski out of a crowd of people if he had not seen him in the squad car or the courtroom, arguing that this answer negated the government's showing of an independent basis. We disagree with the weight that appellant would assign to this answer. It is not the function of this court to reweigh the evidence or to substitute its judgment for that of the trier of fact. *United States v. Tanner*, 471 F.2d 128 (7th Cir.1972), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220. We defer to the judgment of the trial court that heard the testimony and had an opportunity to observe the demeanor of the witness and to judge whether the answer indicated uncertainty in the identification or an

inability to answer a hypothetical question. We concur in the court's refusal to base a rejection of the government's evidence on such a slender reed.

The decision of the district court is AFFIRMED.