**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Donna A. HATCHETT, Defendant–Appellant.**

No. 93–3487.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1994.

Decided Aug. 19, 1994.

Lee H. Dodd, Office of U.S. Atty., Springfield, IL (argued), for U.S.

Jon G. Noll, Springfield, IL (argued), for Donna A. Hatchett.

Before POSNER, Chief Judge, COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

On August 5, 1992, Donna Hatchett and her daughter Felicia were indicted on charges stemming from three sales of crack cocaine made to an undercover officer inside the Hatchetts' residence at 1011 South 16th Street, Springfield, Illinois. Counts I, II, and III alleged that on January 27, 1992, Felicia knowingly distributed mixtures or substances containing cocaine base, in violation of 21 U.S.C. § 841(a)(1), while Count IV charged that Felicia possessed cocaine with intent to distribute, in violation of § 841(a)(1). Donna was named only in Count II of the indictment, which alleged that she knowingly aided her daughter Felicia in the distribution of cocaine base, in violation of § 841(a)(1) and 18 U.S.C. § 2. Felicia pled guilty to the four charges and received a prison term totalling sixty months. Donna entered a plea of not guilty to Count II and was convicted by a jury of aiding her daughter Felicia in the distribution of 1.1 grams of coke, and taking into account her prior criminal history and her unbelievable trial testimony, received a sentence of 123 months' imprisonment and five years of supervised release. The court also imposed a special assessment of $50. We affirm.

## FACTS

Jerry Covington, a confidential informant working for the Illinois State Police, testified at Hatchett's trial that on January 27, 1992, he informed Illinois State Police Special Narcotics Agent Brian Latham that he (Covington) had made arrangements to purchase crack cocaine from Felicia. Covington stated that later that day, at approximately 6:30 p.m., he and Special Agent Latham (undercover) met Felicia at the defendant's (Donna's) and Felicia's residence in Springfield, Illinois. Covington told the defendant's daughter (Felicia) that Latham wished to purchase a sixteenth of an ounce of crack for $100. Covington testified that Felicia accepted the money (serial numbers recorded), left the room, and returned with 0.9 grams of crack cocaine, and handed it to Latham. Agent Latham and Covington then departed.

### Agent Latham's Testimony

Officer Latham testified that approximately one hour later he and Covington returned to the Hatchett residence to purchase more drugs, but this time they encountered the defendant Donna Hatchett (Felicia's mother) in the kitchen. Special Agent Latham further stated that Covington greeted her and said that Latham was "shopping."[1] Donna, obviously familiar with the meaning of the term "shopping," replied, "I'll see what I can do." Latham stated that he handed Donna $100 in prerecorded bills to purchase the drugs. The defendant left the room and walked down a hallway into the living room. Fearing that Donna might exit the premises without either returning the money or delivering the drugs, Officer Latham proceeded a few steps into the hallway and observed Donna hand the $100 to her daughter Felicia. A short time later, Felicia entered the kitchen and gave Latham 1.1 grams of crack cocaine. According to Agent Latham, Felicia stated that she had more coke to sell and that he should return if he needed more. Covington and Latham departed.

Special Agent Latham testified that after the second transaction he and Illinois State

Attorney Ken Tupy prepared an affidavit recounting the facts and circumstances surrounding the two drug buys earlier that evening. Latham presented the affidavit to a judge, applied for, and received a search warrant for the Hatchett residence for drugs, guns, cash, and drug paraphernalia. Latham further stated that prior to the execution of the search warrant, he returned to Donna's residence for a third time that night, and encountered Felicia, who sold him another 0.4 grams of crack. A short time after the third transaction, the Illinois State Police executed the search warrant at Donna's residence. Officer Jones, who assisted in the search, stated that after entering the house he observed Felicia enter a bathroom and return to the living room, and that shortly thereafter he retrieved two baggies in the toilet bowl containing cocaine weighing 10.8 grams. Upon questioning, Felicia stated that she had attempted to flush it down the toilet. Officer Kim Frick testified that she searched Donna and her daughter Felicia and found $1,072 in currency in Felicia's pockets (including the recorded bills paid out in the earlier transactions), but found nothing on Donna's person.

### Felicia Hatchett's Testimony

Felicia Hatchett testified for the defense, and stated that at the time of trial, she was nineteen years old, and had been selling drugs for a year and a half prior to her arrest. Felicia claimed she never sold drugs in her mother's presence and that on January 27, 1992, it was she and not her mother who accepted the $100 from Officer Latham. Felicia tried to persuade the jury that her mother knew nothing of her drug activity, a claim that the jury most likely disbelieved as Felicia also testified that: (1) she had been selling drugs from the house she lived in with her mother for the past one and one-half years; (2) she had smoked marijuana in her mother's presence; (3) she [Felicia] "sometimes" left her supply of crack cocaine on her headboard, in plain view, and (4) occasionally she "would just leave [rocks of cocaine] sit-

---

1. "Shopping" is a street term used by drug dealers and users referring to one's interest in purchasing drugs and demonstrates that persons using the term are knowledgeable of the drug culture lexicon.

ting out" when she was not at home for the convenience of her customers, who would take the cocaine and leave money.

In addition, Felicia stated that "due to the nature of [her] business[,]" there were "*a number of people going in and out of*" the house, and that on the night in question, she had made "*five or six*" cocaine sales (although she was only charged with and pled guilty to three sales). Felicia said it was common practice for her customers to come back "often" to purchase more drugs, and that it was "possibl[e]" that Donna was present during "some" of the evening's transactions. Finally, Felicia testified that on previous occasions *Donna had accepted money from her (Felicia's) acquaintances* when she was not present, and thereafter Donna *delivered the money to her*. In an effort to protect her mother, Felicia also testified that her mother had no knowledge of what the money was really for, stating that those giving the money to Donna would say they "owed this to Felicia." Felicia's testimony that Donna was oblivious to the drug activity in the house is implausible given Felicia's testimony that she (Felicia) left crack cocaine in plain view for her customers who would enter Donna's house, take the cocaine and leave money.

### Donna Hatchett's Testimony

At trial, Donna Hatchett testified that she had had a "major problem ... with illegal drugs," specifically cocaine and heroin, and she displayed scars on her arms and hands to the jury that were caused by the injection of those drugs. She stated that in the past she had committed burglaries and prostitution to obtain money for her drug habit, crimes for which she had been imprisoned. The defendant testified that following her release from prison in 1987, and especially after the 1991 drug-related murder of her son, Alfonzo, she was "totally against drugs." As evidence of her newly discovered anti-drug stance, Donna alleged that on November 18, 1991, only two months prior to this arrest, she called the police and reported that "Felicia was selling dope and that she [Donna] believed that the furniture in the house was stolen furniture." The prosecutors called Officer

Larry Stelivan to the stand, who stated he had interviewed Donna at her home in response to her phone call. Contradicting her testimony, Stelivan testified that Donna's call was about a domestic disturbance, and that during the interview, Donna never made "reference to any drug transaction involving Felicia Hatchett."

Donna also testified that she moved out of her residence for a short period of time from November 18, 1991 to mid-January of 1992 to get away from her daughter's drug dealing. She testified that she returned to her house in Springfield in mid-January after she was assured by Felicia that there was no longer any drug dealing going on at her home. Donna stated that although she knew her daughter had sold drugs in the past and that she had "seen or been in Felicia's presence when [Felicia had] been smoking marijuana," she believed that as of January 1992, Felicia had stopped. Contradicting herself, Donna testified that she "had suspicions" that Felicia was dealing drugs because "[s]ome of *the people that were coming to the house were known to me as drug addicts, and not just necessarily friends of [Felicia's]."* Donna also admitted collecting money from "drug addicts" and turning it over to Felicia.

Donna further testified that she did not see her daughter with crack cocaine on January 27, 1992, because she was across the street in another house at times during the evening. She also stated that she did not participate in nor assist in any of Felicia's drug sales. Donna specifically denied that she accepted $100 from Officer Latham or that she gave the $100 to her daughter, but as stated above, admitted that in the past when Felicia was absent from the premises she had occasionally accepted money from her daughter's acquaintances. These "acquaintances" are the same people Donna identified as drug addicts who would leave money for Felicia, claiming that they owed Felicia money. Donna knew that drug addicts were arriving at her home claiming to "owe" money to Felicia. Donna, in collecting this money from these drug addicts, was thereby assisting her daughter in the distribution and sale of crack cocaine.

In opposition to Felicia's earlier testimony, Donna stated that she knew that Felicia had been selling drugs for some time and she recognized that even in late January 1992, Felicia had no means of support. Upon returning to Springfield in early January of 1992, Donna admitted that there was still traffic through the house: "it was still—probably to you [the prosecutor] it would be an excessive amount of people." She also admitted that although she couldn't remember taking money from people in January, "[i]t's possible" that she did.

Donna's testimony that she did not believe Felicia was dealing drugs in January of 1992 is at best unbelievable. Because of the discrepancy in her testimony, the jury in all probability disbelieved Donna as it found her guilty of knowingly aiding in the distribution of cocaine.

### The Presentence Report

In Donna's presentence report it was recommended pursuant to U.S.S.G. § 1B1.3 that she be held responsible for the crack cocaine from the transaction in Count II (1.1 grams) and for the crack cocaine (10.8 grams) which her daughter Felicia pled guilty to possessing under Count IV. Based on her highly suspect trial testimony, including her claim that she was opposed to drug trafficking, that she had informed the police about Felicia's drug dealing, and that she did not participate in the transaction with Agent Latham,[2] the presentence report recommended that Donna's base offense level be increased two levels for obstruction of justice (U.S.S.G. § 3C1.1). (Donna does not challenge the obstruction of justice enhancement on ap-

peal.) The Assistant United States Attorney referred to Donna as a *"facilitator"* of the drug operation and deserved a sentence in the middle of the sentencing range. Donna objected to the presentence report's recommendation concerning the 10.8 grams of crack, arguing that she had nothing to do with that amount of cocaine and therefore should not be held accountable for it. She had, however, already stated that she accepted money from drug addicts and gave it to Felicia. All the while, Donna knew that Felicia was in no position to have lent money to anyone. The Judge at the sentencing hearing disagreed, holding that Donna was responsible for the 10.8 grams under § 1B1.3 *because it "was part of the same course of conduct or common scheme as the offense of conviction."* The sentencing judge expressly found that "she [the defendant] was directly involved in one of [the transactions]."[3] The court then increased the base level two levels for obstruction of justice, giving the defendant a final base level of 26. Based on Donna's criminal history category of IV, the court sentenced Donna to 123 months of imprisonment, which fell within the applicable range of 110 to 137 months, five years of supervised release, and ordered Donna to pay a special assessment of $50. Donna does not challenge the two-level sentence enhancement for obstruction of justice.

### ISSUES

On appeal Donna sets forth several reasons for reversal of her conviction, or in the alternative a reduction of her sentence: 1) Whether the evidence is sufficient to support Donna's conviction under Count II for aiding

---

2. Donna refused to cooperate with the U.S. Probation Officer by refusing to comment on her involvement with the instant offense.

3. The sentencing judge relied on and approved of the presentence report which stated:
   "This U.S. Probation Officer's decision to hold the defendant accountable for the 10.8 grams of cocaine recovered by law enforcement officers during the course of their executing a search warrant at the defendant's residence stems from reviewing the relevant conduct guideline as found at U.S.S.G. § 1B1.3. Furthermore, U.S.S.G. § 1B1.3(a)(1)(A) states in part that the base offense level is determined by taking into account all such acts and omis-

sions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant and U.S.S.G. § 1B1.3(a)(2), which further states in part that the base offense level shall also be determined by all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. As the 10.8 grams of crack cocaine were found in the defendant's residence approximately five hours after the defendant participated in a crack cocaine transaction, relevant conduct holds her accountable for this amount. Lastly, relevant conduct is applicable whether or not the defendant is charged with conspiracy."

in the distribution of 1.1 grams of crack cocaine; 2) whether the court properly held the defendant accountable for the 10.8 grams of coke recovered from Donna's home during the search; and 3) whether Donna was denied a fair trial by the court's alleged commission of certain errors, described below.

## DISCUSSION

### I. Sufficiency of the Evidence

Donna contends that the evidence presented at trial is insufficient to support the jury's guilty verdict that she aided in the distribution of crack cocaine. She argues that Covington's testimony was unreliable because while he was acting as a drug informant for the Illinois State Police and purchasing drugs with the government's money, he appropriated some of the drugs for his personal use. She claims that at trial Covington testified that he was not sure who handed the 1.1 grams of coke to Latham during the second transaction, but prior to trial he stated that it was Donna Hatchett who gave the drugs to the agent. Donna also challenges Special Agent Latham's testimony, arguing that "it flies in the face of reality" that Latham, an experienced narcotics officer, would be "sneaking down hallways and peeking around corners" when he was unfamiliar with the house and not knowing who else was present in the house. She also contends that Agent Latham's trial testimony was inconsistent with the testimony given in his search warrant affidavit, noting that the officer's search warrant affidavit did not refer to the fact that he walked a few steps down the hallway and peeked into the living room. Finally, she notes that at trial Latham testified that he "remember[ed] that Felicia] had gold teeth" but that in reality Felicia does not have any gold teeth.

### Standard of Review

As this court has often stated, "[i]t is not the function of this [appellate] court to reweigh the evidence or to substitute its judgment for that of the trier of fact." *United States v. Wisniewski*, 741 F.2d 138, 144 (7th Cir.1984). In *United States v. Davis*, 15 F.3d 1393 (7th Cir.1994), we stated:

When reviewing challenges to the sufficiency of evidence supporting a conviction, we consider the evidence presented at trial in the light most favorable to the government; if we conclude that any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, we will reject the defendant's sufficiency challenge. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

*Id.* at 1397. We emphasized that:

The reviewing court neither weighs the evidence nor assesses the credibility of witnesses, "even when the evidence at trial is 'totally uncorroborated and comes from an admitted liar, convicted felon, large-scale drug-dealing, paid government informant'[.]" *United States v. Beverly*, 913 F.2d 337, 358 (7th Cir.1990), *cert. denied*, 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991) (citing *United States v. Molinaro*, 877 F.2d 1341, 1347 (7th Cir.1989)).

*Id.* at 1397–98.

With respect to the defendant's contentions that witnesses Covington and Agent Latham were not credible, we note that:

Because questions of credibility are solely for the trier of fact, such arguments are "wasted on an appellate court." *United States v. Ruiz*, 932 F.2d 1174, 1178 (7th Cir.1991) (quoting *United States v. Molinaro*, 877 F.2d 1341, 1347 (7th Cir.1989)). It is the trier of fact who "has the best 'opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements' as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *United States v. Duarte*, 1 F.3d 644, 651 (7th Cir.1993).

*United States v. Marin*, 7 F.3d 679, 688 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994). In addition, the assessment of a witness's credibility "is a matter inherently within the province of the jury, and 'absent extraordinary circum-

stances,' this court will not reevaluate the testimony of a witness to determine his or her motives or other possible measures of reliability." *United States v. Dunigan,* 884 F.2d 1010, 1013 (7th Cir.1989) (citing *United States v. Garner,* 837 F.2d 1404, 1423 (7th Cir.1987)).

We disagree with Donna's theory that the evidence was insufficient to convict her of Count II. In this case, Hatchett's counsel cross-examined Covington, bringing to the jury's attention Covington's history of drug abuse and his allegedly inconsistent statements. It was also brought out that Covington was personally using some of the drugs that he purchased during the stings, with the government's money. These issues of Covington's credibility were presented to the jury who had full opportunity to weigh and determine his credibility. We will not reweigh the jury's determination. Secondly, we do not view Special Agent Latham's testimony that he followed Hatchett "a few steps" down the hallway and witnessed her pass the drug money to her daughter to "fly in the face of reality," as Donna has claimed. We interpret Donna's argument as an allegation that Agent Latham's testimony was incredible as a matter of law. "To be incredible as a matter of law, the witness's testimony must be unbelievable on its face." *United States v. Van Wyhe,* 965 F.2d 528, 531 (7th Cir. 1992). The testimony that the officer took a few steps down the hallway in order to get a better view of the defendant, even in a house he had visited only once before, is not "unbelievable on its face." Officer Latham testified that he followed Hatchett just "a few steps" because he was concerned that Donna might leave the house without either delivering the cocaine or returning the $100. The jury had the opportunity to assess the credibility of Latham's and Donna's respective testimony and obviously believed him. We refuse to accept the argument that Agent Latham's testimony was incredible as a matter of law.

Donna maintains that Agent Latham's testimony is unreliable because it is in conflict with the affidavit that he submitted in his application for the search warrant on January 27, 1992. The defendant claims that since Agent Latham did not state in his supporting affidavit that he followed Donna a few steps down the hallway, he must have fabricated the story at trial in order to implicate Donna in the drug dealing. The defendant's argument is irrelevant because there is no requirement that an officer state each and every detail regarding a suspected crime in his affidavit for a search warrant. *See United States v. McNeese,* 901 F.2d 585, 594 (7th Cir.1990) ("Nor is an omission [in a search warrant affidavit] material if, in context, the information was of such minimal significance that its omission could not reasonably have affected the magistrate's judgment in finding probable cause to search"). Thus, in this case, Officer Latham's trial testimony that he observed Donna hand the money to Felicia is no less reliable simply because he failed to mention that he took a few steps down the hallway in the warrant affidavit, which detailed the first two drug transactions.

Finally, Hatchett's attack on Officer Latham's allegedly mistaken testimony that Felicia "had gold teeth" on the night of January 27, 1992, is unpersuasive because whether Agent Latham was mistaken about the gold teeth goes to his recollection and credibility as a witness, and any question of credibility is a matter for the trier of fact. In this case it was for the jury and the jury alone to make credibility determinations. Even if the jurors disbelieved Latham's testimony that Felicia had gold teeth, they still could—and obviously must have—believed that Donna was guilty beyond a reasonable doubt of each and every element of Count II. We reiterate that "[b]ecause questions of credibility are solely for the trier of fact, such arguments are 'wasted on an appellate court'." *Marin,* 7 F.3d at 688. Covington and Latham both testified that they went to Donna's home on January 27, 1992, and met Donna in the kitchen. The informant Covington told Hatchett that Latham was "shopping" and Latham handed Donna $100 for the purchase of the drugs. Donna responded, "I'll see what I can do," and left the room. Concerned that the defendant might exit the house with the money without completing the drug deal, Officer Latham "took several steps into the hallway and peeked into the

living room," and witnessed Donna Hatchett hand the money she just received to her daughter, Felicia. A short time later, Felicia entered the kitchen and delivered 1.1 grams of "crack" to Latham. Donna was an active participant in the drug deal alleged in Count II of the indictment, accepting the $100 given to her for coke by Special Agent Latham and handing it over to her daughter, Felicia. By acting as a facilitator for a willing buyer and a willing seller, Donna aided in the distribution of cocaine. "The Government is not required to prove the defendant's participation in every phase of the offense, but must only show that the defendant willfully associated [her]self with the criminal enterprise and contributed to its success." *United States v. Harris*, 713 F.2d 623, 626 (11th Cir.1983).

After review of the trial record we remain convinced that the evidence presented was more than sufficient for a rational jury to conclude beyond a reasonable doubt that Donna Hatchett knowingly aided in the distribution of cocaine. We agree with the district judge's observation that there was sufficient evidence to link Donna to the same course of conduct in the distribution of 11.9 grams of crack cocaine, therefore, we reject the defendant's sufficiency of the evidence argument.

## II. Sentencing

The presentence report recommended and the sentencing judge determined that Donna's base offense level was 26 based on the court's finding pursuant to U.S.S.G. § 1B1.3 that Hatchett was responsible for a total of 11.9 grams of cocaine base (1.1 grams from the second transaction and the 10.8 grams discovered in Donna's house during the search). With Donna's Criminal History Category of IV, and including her two-level increase for obstruction of justice (not challenged), Donna faced a potential prison sentence ranging from 110 to 137 months. She was sentenced to 123 months. Because the 10.8 grams were part of the same course of conduct, the court rejected her argument that she should be held accountable only for the 1.1 grams of cocaine involved in the second transaction.

On appeal, the defendant, Donna Hatchett, contends that the court erred in holding her accountable under U.S.S.G. § 1B1.3 for the 10.8 grams of cocaine base found in her toilet bowl during the search of her residence. In support of her argument Donna argues that she was not involved with the first and third drug transactions that occurred in her house on that evening, and relies on the fact that Felicia stated that she, and not her mother, was responsible for the cocaine found in the toilet. Donna further argues that the government supported her position when the Assistant United States Attorney remarked at her sentencing hearing that, "It's apparent, I think, from the evidence that's been presented, that her daughter, Felicia Hatchett, was the primary person involved in the drug trafficking, and that Defendant was more of a facilitator."

### 1. Standard of Review

■ The standard of review in this case places a heavy burden on the defendant. The government must prove the relevant sentencing factors under the Sentencing Guidelines by a preponderance of the evidence. *United States v. Cotts*, 14 F.3d 300, 305 (7th Cir.1994); *United States v. Hamm*, 13 F.3d 1126, 1129 (7th Cir.1994). The factual findings of the district court will not be overturned unless they are clearly erroneous, while the interpretation of the Sentencing Guidelines is subject to *de novo* review. *United States v. Lozoya–Morales*, 931 F.2d 1216, 1218 (7th Cir.1991). Thus, we will reverse the district court's conclusion as to the quantity of cocaine attributed to the defendant only if we have a definite and firm conviction that the district court made a clear mistake in sentencing. *United States v. Rivera*, 6 F.3d 431, 444 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994); *United States v. Goines*, 988 F.2d 750, 775 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). The district court is to base its determinations upon the evidence in the record and upon its own credibility evaluations. *Cotts*, 14 F.3d at 305. A trial judge's determination of credibility must be given utmost deference on appeal. *Hamm*, 13 F.3d at

1129–30; *United States v. Cherry,* 938 F.2d 748, 758 (7th Cir.1991).

### 2. Determining the Base Offense Level

In *United States v. Crawford,* 991 F.2d 1328 (7th Cir.1993), this court summarized the principles for holding a defendant, who is not charged with a conspiracy, accountable for drugs beyond the offense of conviction:

> "[U.S.S.G. § 2D1.1] sets forth the base offense levels for narcotics offenses. The base offense level is determined by the amount of drugs included in the defendant's relevant conduct. In determining a base offense level, a sentencing court *may attribute to defendant a quantity of drugs negotiated or sold by other persons.* This is true even where defendant was either not charged with or not convicted of conspiracy. * * *
>
> Guideline § 1B1.3(a)(2) provides that the "relevant conduct" which the sentencing court may consider includes "acts and omissions committed or aided and abetted by the defendant, *or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction.*"

*Crawford,* 991 F.2d at 1330–31 (citations omitted) (emphasis added).

Relying on U.S.S.G. § 1B1.3(a)(2), we held in *Crawford* that a defendant may be sentenced based on the quantity of drugs found to be part of the *"same course of conduct or common scheme or plan as the offense of conviction." Id.* at 1331 (emphasis added). In determining whether a defendant's acts were part of the "same course of conduct or common scheme," *Crawford* went on to state that "the court may consider whether similar parties were involved in each transaction, the geographic relationship, the temporal relationship and any other relationship between the convicted offense and the relevant conduct." *Crawford,* 991 F.2d at 1331. Thus, "[c]onduct that is not formally charged or is not an element of the *offense of conviction may enter into the determination of the applicable guidelines sentencing range."* U.S.S.G. § 1B1.3, comment. (backg'd.) (emphasis added).

### 3. Analysis

The sentencing court found that the evidence was *"quite clear"* that Donna Hatchett was *"directly involved"* in at least one of the three transactions that *occurred at Hatchett's Springfield, Illinois, residence during a six and one-half hour* time-frame on January 27, 1992. The sentencing judge properly determined that the circumstances relating to the 10.8 grams of crack found in Hatchett's home were "part of the same course of conduct or common scheme as the offense of conviction." When considering the evidence in its totality, as we must, it is evident the trial judge was convinced at the time of sentencing, after review of the entire record, that Donna and her daughter were intimately acquainted with drugs and drug dealing and that Donna, a former drug addict herself, knew of, approved, and facilitated Felicia's drug dealing. This is supported by the following trial testimony: (a) That all three drug transactions occurred in Donna Hatchett's residence where she had been living with her daughter for at least the last year and a half; (b) All three transactions referred to in this case occurred on the same night within a six and one-half hour time period; (c) That both Donna and Felicia were intimately acquainted with drugs and drug dealing; (d) Donna knew the meaning of the drug term "shopping" and when told that Latham was "shopping," Donna replied, "I'll see what I can do"; (e) Agent Latham observed Donna hand over to Felicia the $100 Latham had given Donna for the purpose of buying cocaine; (f) Donna assisted by accepting money from known drug addicts in Felicia's absence, and delivering the money to her daughter; (g) Felicia testified that she "sometimes" left her supply of crack cocaine on her headboard, in plain view, (an unbelievable assertion, which if taken as true, indicates that Donna while living in the house must have known of Felicia's drug dealing); (h) Donna and Felicia were both admitted drug users; (i) Felicia had smoked marijuana in Donna's presence; (j) Felicia had been selling drugs for a year and a half, at least part of the time from Donna's residence (the rest of the time on the streets); (k) Donna knew Felicia was neither in school nor em-

ployed and was in no position to be lending money to others; (*l*) Felicia sold drugs from Donna's residence prior to January 27, 1992; (m) That it was "possibl[e]" that Donna was present during "some" of Felicia's numerous drug transactions on the night of January 27, 1992; (n) Donna committed perjury when she testified that she did not participate in the second drug transaction; (*o*) Donna stated that she moved out of the house in November 1991 for a period of two months because Felicia was selling drugs from the house; (p) Donna accepted money for Felicia from those she knew to be drug addicts; (q) Felicia testified that occasionally she "would just leave [rocks of cocaine] sitting out" when she was not at home for the convenience of her customers.

This final piece of testimony, that Felicia left drugs out for addicts to serve themselves, clearly illustrates that Felicia testified in the manner in which she did in order that she might shield her mother. Considering the high cost of crack cocaine, it is most unlikely that Felicia would leave the drugs unattended when she departed from the house; a reasonable inference is that the drugs were left under Donna's control to distribute and collect money. On this point, we note that "[j]udges in the federal system, whether they are in the trial or appellate system, do not operate in a vacuum, shielded from knowledge of drug operations in the real world." *United States v. Tolson*, 988 F.2d 1494, 1504 (7th Cir.1993) (quoting *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir.1984)). We note that Donna's portrayal of herself as having taken a strong anti-drug stance was totally unconvincing, because on the one occasion Donna claimed to have

called the police to turn her daughter in for "selling dope," the responding officer who investigated Donna's complaint and spoke with Donna testified that Donna never mentioned anything about Felicia's drug dealings. Based on the evidence the district court heard at trial and at sentencing, we conclude that the court was more than justified in determining that the 10.8 grams of crack, combined with the 1.1 grams for which she was convicted in Count II, were part of the same course of conduct or common scheme as the offense of conviction. *Crawford*, 991 F.2d at 1330–31.

We add that Donna's argument that she was not present at the first and third transactions is irrelevant, because neither the presentence recommendation nor the court's sentencing decision to include the 10.8 grams were based upon those two transactions. Rather, as stated above, the judge sentenced Donna to the 11.9 gram quantity on the basis of her being responsible for the crack (1.1 grams) distributed during the second transaction (Count II under the indictment) and the 10.8 grams found during the search of her home after the completion of the drug sales that evening. Thus, we consider only the issue of whether the court properly held Donna responsible for 11.9 grams of cocaine base (1.1 grams charged under Count II plus the 10.8 grams found in her home), as well as to the dissent's contention that the sentencing judge's findings were inadequate and that substantial evidence of Donna's complicity in Felicia's drug-dealings is "virtually nonexistent." [4]

The record supports the district court's conclusion that in addition to Donna's involvement in Count II, Donna participated in

---

4. The dissent apparently finds it inconsistent that on one hand we are "unimpressed" that Donna did not participate in the evening's first and third drug transactions, but on the other hand that we are "impressed" by her presence in the house at other times during the same night. *See dissent* at 1427–28 n. *. Contrary to the dissent's suggestion, however, there is no inconsistency. Donna's non-participation during Felicia's first and third drug transactions is irrelevant, because Donna was neither charged with, nor sentenced for, any activity relating to the first and third drug deals. However, Donna's regular presence at home, including her presence at other times

on January 27, 1992, is relevant—and does "impress" us—because by "placing her on the scene" Donna's presence establishes that Donna would have had the opportunity to participate in Felicia's drug dealings. There is a marked difference between one not being in the home and one not participating in a drug deal. While Donna's mere presence in the house, standing alone, obviously does not demonstrate that Donna participated in Felicia's drug activity, Donna's presence at the house is but one of the many facts, discussed below, presented to the court which justify the conclusion that Donna and Felicia jointly undertook an enterprise to distribute cocaine. Thus, it is not at all inconsistent to

the same course of conduct with her daughter. Donna testified that she visited neighbors across the street at various times, but did not know when exactly she was out of the house. When asked how many drug sales she made during the evening, Felicia testified "I would say five or six." There was no direct testimony that Donna was absent from the house during the other transactions; Felicia stated Donna may have been present during some of the five or six transactions on January 27, 1992 while Donna said that she could not remember being there at any particular time. Donna's testimony is not surprising, for she might be classified as having a 'Selective Memory.' She can remember what may be helpful but suffers an amnesia-like malady when confronted with irrebuttable proof. For example, she did not remember that Agent Latham and Jerry Covington came to the house on January 27, 1992 to buy cocaine, yet she clearly remembers telling Officer Stelivan of Felicia's drug dealing back in November of 1991 (an assertion that the responding officer denies ever was made). Donna also clearly remembered taking money from drug addicts in November of 1991, but couldn't remember if she had done so in January of 1992. The sentencing court's finding that the 10.8 grams was part of the same course of conduct was no doubt based in part on his firsthand assessment of her credibility.

The dissent also concludes that the evidence against Donna, *see supra* at 1419–20, "cannot be dispositive of the scope of Donna's *participation* in Felicia's dealings[.]" *Dissent*, at 1427–28 n. *. Yet even the dissent acknowledges that

> "Donna's assistance in the distribution of 1.1 grams of crack and Felicia's possession (with, most likely, the intent to distribute) of 10.8 grams of crack could be found to be part of the same course of conduct. As the majority describes, Donna, by all indications, worked together with Felicia to consummate the second sale of the evening

which, like the first and third, was likely supplied from Felicia's larger store of crack; also relying on the temporal, geographic and human links between the sale and the supply, the district court supportably concluded that these activities were part of the same course of conduct."

*Dissent* at 1427. We are of the opinion that the evidence received at trial, including circumstantial evidence, is extremely enlightening and demonstrates that Donna was an active participant in a joint drug dealing enterprise with Felicia. Initially, we note that "there is nothing novel about establishing a crime through the use of circumstantial evidence," *United States v. Rose*, 12 F.3d 1414, 1417 (7th Cir.1994), for "[c]ase law recites that 'circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable.'" *Id.* Although any individual piece of evidence might by itself be insufficient to establish this fact, when considered together the preponderance of the evidence establishes that the 10.8 grams of crack were part of the same course of conduct or common scheme as Donna's offense of conviction. Inasmuch as the "[a]scertain[ment] of the amount of drugs involved in an offense for sentencing purposes is a factual determination which will not be disturbed on review absent clear error[,]" and given the vast amount of supporting evidence the district judge's determination that the additional 10.8 grams was part of "the same course of conduct as the offense of conviction," we conclude that the court did not commit clear error.

The dissent suggests further that the district court failed to inquire sufficiently into the issue of whether Donna was a "regular 'steerer'[5] or agent for Felicia" in a jointly-undertaken criminal activity, or whether she was "merely an episodic intermediary." The cases relied on by the dissent are distinguishable in that they concern very minor members of large drug conspiracies.[6] In the in-

---

consider Donna's presence at the house but not her absence.

**5.** Steerer, as the dissent uses the term, is defined as someone who "'direct[s] buyers to sellers in circumstances in which the sellers attempt to conceal themselves from casual observation.'"

*United States v. Copeland*, 902 F.2d 1046, 1049 (2nd Cir.1990) (quoting *United States v. Colon*, 884 F.2d 1550, 1552 (2nd Cir.)), *cert. denied*, 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989).

**6.** In the cases cited by the dissent, what are referred to as minor members of a drug conspiracy were relieved of culpability for most of the

stant case, which does not involve a conspiracy charge, Donna was more than a minor participant; she was a facilitator who aided and assisted her daughter's drug dealing. That was the jury's verdict. For purposes of sentencing, she is being held accountable for the drugs she helped to sell and the drugs stored in her home that were determined by the trial judge to be part of the same course of conduct. *United States v. Crawford*, 991 F.2d 1328, 1330 (7th Cir.1993).

In addition, the dissent claims that even if the court had made such an inquiry into Donna's role, "there is very little in the record to support the wider view of Donna's complicity" and that "substantial evidence of Donna's agreement to join any undertaking beyond the offense of conviction itself is virtually nonexistent." We disagree. The record is replete with evidence that Donna knew of and facilitated her daughter's drug dealing. The multiple instances of her accepting money, coupled with the inconsistent and incriminating trial testimony, are evidence of her guilt.

The dissent states that this court has "collected circumstantial 'evidence'" upon which the district court did not specifically rely when holding Donna responsible for the additional 10.8 grams of crack. As a court of review we are entitled to comb the record to determine the facts in our search for justice. *Moreover, the district court judge is not required to recite each and every fact established at trial, but only so much as is necessary to support the conviction and the aggravating or mitigating circumstances in sentencing.* "While it is true that a trial judge is generally not obligated to give reasons for the imposition of a particular sentence, it is sometimes necessary, *and always advisable,* to do so." *United States v. Harris,* 558 F.2d 366, 374–75 (7th Cir.1977) (citing *McGee v.*

*United States,* 462 F.2d 243, 247 (2nd Cir. 1972) (emphasis added)); *United States v. Carden,* 428 F.2d 1116, 1118 (8th Cir.1970); *see also United States v. Mahoney,* 859 F.2d 47, 49–50 (7th Cir.1988) (sentencing judge need not explicitly state every fact he is relying on to pass sentence).

With respect to the dissent's contention that we have relied upon evidence which the district judge did not specifically rely upon, we turn to the order issued by the district court and note that there are a number of specific findings issued by the court as to the evidence he relied on:

"In drug cases the base offense level is based on all Defendant's relevant conduct which was part of the same course of conduct or common scheme or plan as the offense of conviction. *See* U.S.S.G. § 1B1.3(a)(2). If the Court finds, therefore, that the 10.8 grams of cocaine base was part of the common scheme or plan as the offense of conviction the base offense level must properly reflect that finding.... In the instant case, the same parties were involved in all three transactions. On January 27, 1992 agent B. Latham of the Illinois State Police made three separate purchases of cocaine base from the Defendant's house. Defendant's daughter, Felicia, was involved in all three transactions. Defendant was directly involved with one of the transactions. *The geographic relationship of all of the sales is obvious.* All three transactions occurred at 1011 South 16th Street, Springfield Illinois. The owner of the house, James Kerr, states that on January 27, 1992 the house was rented to the Defendant. The temporal relationship of the sales is very strong. The first sale occurred at approximately 6:00 p.m. The third sale occurred at approximately 11:55

drugs in the conspiracy as their roles did not rise to the level of participation as the other members of the conspiracy. *United States v. Mojica,* 984 F.2d 1426, 1445–46 (7th Cir.1993) (holding that a lookout at a single aborted drug sale of 249 grams of cocaine was not sufficiently associated with the conspiracy to justify sentencing based on 6.5 kilograms, especially in light of the fact that there was no evidence that the defendant would continue to participate in the conspiracy beyond that single transaction); *United States v.*

*Mitchell,* 964 F.2d 454, 460–61 (5th Cir.1992) (holding a low level drug dealer who attempted to sell 26 grams of cocaine was not liable for the 20 kilograms that the conspiracy ultimately distributed). These cases are distinguishable from the instant case in which Donna Hatchett was not a "minor" participant. In fact, the evidence reveals that she admitted that she was aware of Felicia's drug dealing and she was an active participant in the enterprise.

p.m. The search warrant was executed, resulting in the seizure of the 10.8 grams in question, at approximately 12:15 a.m. January 28, 1992. *Thus the sales and the subsequent search of Defendant's house occurred within a six and a half hour period.... The evidence supports a finding that the 10.8 grams of cocaine base seized pursuant to the search warrant was involved in the same course of conduct as the offense of conviction. Accordingly, Defendants base offense level was properly calculated as 26.*"

(Emphasis added).

Through the testimony presented, the trial judge, who was obviously well-acquainted with Donna's activities and had the opportunity to assess the witnesses' demeanor before imposing sentence, obviously believed that Donna was more than an 'episodic intermediary' and not a one-time participant, as the dissent seems to suggest, *see* § 1B1.3, comment (note 2(c)(5)). *See Marin* at 688, (noting that trier of fact has "the best 'opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements,' as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record") (citing *Duarte*, 1 F.3d at 651). The evidence presented to the trier of fact, in conjunction with the reasonable inferences that may be drawn therefrom, support the judge's determination that the existence of the 10.8 grams of crack represented the same course of conduct or common scheme as the offense of Donna's conviction.

Finally, we observe that the dissent "do[es] not dispute that Donna's assistance in the distribution of 1.1 grams of crack and Felicia's possession (with, most likely, the intent to distribute) of 10.8 grams of crack could be found to be part of the same course of conduct." Instead, the dissent argues that Donna should not be held accountable for the additional 10.8 grams of crack found in her house because Felicia's drug-trafficking ventures were not reasonably foreseeable acts in furtherance of a jointly undertaken criminal activity. (Citing U.S.S.G. § 1B1.3(a)(2), referencing subsection (a)(1)(B)). In support of its position, the dissent contends that "there is little in the record to support the wider view of Donna's complicity" and that "substantial evidence of Donna's agreement to join any undertaking beyond the offense of conviction itself is virtually nonexistent." While we agree that there is no direct evidence that, for example, Donna physically handled or observed the disputed 10.8 grams of cocaine base, there is overwhelming circumstantial evidence and incriminating testimony, set forth herein, that Donna was fully aware of, approved, and on occasion actively facilitated Felicia's drug dealings. As stated above, *"circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable." Rose*, 12 F.3d at 1417 (emphasis added); *see also United States v. Ludwig*, 897 F.2d 875, 880 (7th Cir.1990) (*"[w]hile '[c]ommon sense is no substitute for evidence, ... common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence'"*) (emphasis added); *United States v. Balzano*, 916 F.2d 1273, 1284 (7th Cir.1990) (observing that *"'[n]ot only is the use of circumstantial evidence permissible, but circumstantial evidence may be the sole support for a conviction'"*) (emphasis added). In this case, Donna knew Felicia was dealing cocaine; she allowed addicted customers to enter her house; she collected money from known drug addicts who claimed the money was "owed" to Felicia when Felicia was not at home while at the same time knowing that her daughter neither had a job nor any visible means of support; and, she actively assisted Felicia in the transaction involving Agent Latham. Thus we disagree with the dissent's suggestion that there is "little" in the record to support the wider view of Donna's complicity in Felicia's possession of the 10.8 grams of crack, as well as with its conclusion that there is no substantial evidence that Donna agreed with her daughter to participate in criminal activity beyond the offense of conviction. The trial court expressly stated in its findings that Donna took part in the same *"course of conduct"* as Felicia. To find clear error we must be persuaded that the sentencing court made a

fundamental error which resulted in a complete miscarriage of justice. *United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991). From the evidence adduced at trial, there was no error on the part of the sentencing judge in his application of the Sentencing Guidelines to the instant case or his conclusion that the 10.8 grams was part of the same course of conduct.

### III. Fair Trial

Donna contends she "was denied a fair and impartial trial based upon [the] numerous errors [of] law and facts which occurred at trial." Specifically, she alleges that: 1) the trial court erred in denying her motion for judgment of acquittal based upon the insufficiency of the evidence; 2) the government failed to establish venue; 3) the court erroneously admitted one of her prior convictions in evidence; 4) the district judge abused his discretion in allowing the government, after it had rested its case, to reopen the case to move for admission of exhibits which had been the subject of testimony but which had not previously been admitted; and 5) that she was denied a fair trial because there were no African–American jurors on her petite jury.

#### 1. Sufficiency

■ Hatchett contends the court erred in denying her motion for judgment of acquittal, made at the close of her case-in-chief, based on the sufficiency of the evidence. The decision to grant or deny a motion for acquittal rests within the sound discretion of the trial court. *United States v. Reed*, 875 F.2d 107, 113 (7th Cir.1989). Because we have previously determined that the evidence was sufficient to find Hatchett guilty of each and every element of the crime charged beyond a reasonable doubt, it follows that denying Donna's motion for judgment of acquittal based on insufficiency of the evidence was not an abuse of discretion.

#### 2. Venue

■ Donna next contends that "[t]he Government did not demonstrate venue ... for the alleged offenses in failing to ask the Court to take judicial notice that all of the events alleged occurred within the Central District of Illinois."

In *United States v. McDonough*, 603 F.2d 19 (7th Cir.1979), this court noted that proof of venue "is not an essential fact constituting the offense charged ... and need only be proved by a preponderance of the evidence." *Id.* at 22 (citations omitted). We further stated that "[i]n the absence of a showing of prejudice to the defendant, the trial court would be well within its discretion in reopening the Government's case to admit proof of venue.... We decline to let what could be nothing more than gamesmanship compromise the fundamental purpose of the trial to determine the merits of the charges." *Id.* at 22–23 (citations omitted).

In this case the government met its burden of establishing proper venue by a preponderance of the evidence when the government established that all three drug transactions described above occurred in Springfield, Illinois. Because it is uncontroverted that Hatchett's crime occurred in Springfield, Illinois, and that city lies within the Central District of Illinois, venue in the District Court for the Central District of Illinois was proper. Thus, we hold that the judge did not commit error in determining that the government had established proper venue.

#### 3. Prior Conviction

■ Donna challenges the introduction into evidence of her prior conviction for residential burglary. Prior to trial, Donna made a motion in limine seeking to exclude from evidence the fact that Donna had been convicted of residential burglary in the State of Georgia on December 14, 1982. Hatchett contended that the evidence of her prior conviction did not meet the time limitations of Fed.R.Evid. 609(b) because her conviction was more than ten years old. In response, the government argued that Rule 609 measured the ten year period from the day of conviction or the day of release, whichever was later, and since Hatchett was convicted on December 14, 1982, and released on July 22, 1987, the evidence of her prior conviction was not inadmissible under Rule 609(b), as she had argued. The trial court denied Donna's motion in limine, noting that since

Hatchett was released from prison in 1987, her "burglary conviction is within the applicable time limits of Rule 609[,]" and that "its probative value does not outweigh the prejudicial effect." During the direct examination of the defendant, Donna testified that she had been convicted of residential burglary on December 14, 1982, and that she was released from prison in July of 1987.[7] On cross examination, the government introduced into evidence, without objection, the formal record of that conviction. Because Donna's counsel did not object when the government moved to introduce the judgment of her residential burglary conviction, she has forfeited the issue on appeal. *Davis*, 15 F.3d at 1406 ("[T]o preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and the opposing party to the specific grounds for the objection"). Therefore, Donna's only recourse lies in Fed. R.Crim.P. 52(b) which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To receive relief under plain error analysis, the defendant "must meet four requirements ... that there was error, that the error was plain, that the plain error affected his substantial rights, and that the plain error which affected his substantial rights *also* seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Davis*, 15 F.3d at 1407. " 'Affecting substantial rights' normally means that 'the error must have been prejudicial,' i.e. 'must have affected the outcome of the District Court proceedings'." *Id.* (citing *United States v. Olano*, — U.S. —, —, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993)).

We are unpersuaded by Donna's argument that the admission of her prior burglary conviction prejudiced her defense because it was Donna's attorney, not the government, who first brought the fact of her prior conviction to the jury's attention. Having "opened the door" regarding her prior conviction on direct examination, Donna cannot complain on appeal about the fact that the government did nothing more than complete the record in offering the formal judgment of conviction into evidence during Donna's cross-examination. *See United States v. Lerch*, 996 F.2d 158, 162 (7th Cir.1993) ("introduction of ... evidence [permissible] where other party opens the door") (citing *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988), *cert. denied*, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989)).

### 4. Reopening of Government's Case to Admit Exhibits

Following the close of the evidence, the government moved to reopen its case for the purpose of admitting certain exhibits that were testified about but not offered into evidence during the trial (such as photographs of the residence, a diagram of the house's floor plan, the currency recovered from the search of Felicia) which the government had inadvertently failed to request be received in evidence during its case-in-chief. It is undisputed that the proper evidentiary foundation for the admission of these exhibits had previously been laid; the only problem was that the government had neglected to timely move for their admission. Immediately after the close of evidence, the government moved to reopen its case in order to move the introduction of those exhibits. The government made and the court granted the government's motion, over objection, to reopen the case to receive the exhibits.

Donna contends that the court abused its discretion when it admitted the evidence which the government inadvertently failed to move to admit during its case-in-chief. We disagree, as the trial court's act of receiving the exhibits was purely a procedural ministe-

---

7. Specifically, Donna testified in response to her attorney's questions as follows:

Q.: I want to take you back to, let's say, December 14, 1982. Do you remember that date?
A.: Yes.
Q.: What was that date?
A.: I was sentenced to the Department of Corrections on December 14th.

Q.: You were imprisoned?
A.: Yes.
Q.: And why were you imprisoned?
A.: Residential burglary.

\* \* \* \* \* \*

Q.: And you were paroled, I believe, in 1987. Is that not correct?
A.: Yes. July.

rial act for which the court is allowed great discretion. "We will reverse a district court's decision regarding trial management only for an abuse of discretion." *Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1384 (7th Cir.1993). *See also Davis,* 15 F.3d at 36 (noting that "we are searching for truth, not for alleged errors").

### 5. Representative Jury

■ Finally, Donna appears to argue that she was denied a fair trial because the petite jury failed to include any African–Americans (defendant is also African–American). "The Supreme Court has recently stated, however, that a defendant has no Sixth Amendment right to a petite jury representing a fair cross-section of the community." *United States v. McAnderson,* 914 F.2d 934, 941 (7th Cir.1990) (citing *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990)).

If, on the other hand, the defendant's argument is that the venire from which the petite jury was selected was illegally constituted, then under *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), she must demonstrate:

> "1) that the group alleged to be excluded is a distinctive group in the community; 2) that the representation of this group in the venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Duren,* 439 U.S. at 364, 99 S.Ct. at 668.

Because Donna has failed to submit any evidence concerning the percentage of African–Americans in the community from which the venire was selected, as well as failed to present evidence of the race and number of persons who appeared in the courtroom for jury selection, we refuse to hold that the venire from which the petite jury was chosen did not have a fair and reasonable number of African–American citizens in relation to their number in the community. Indeed, we cannot ascertain from this record the race of the jurors who served on the petite jury. Moreover, Hatchett has failed to demonstrate that any alleged underrepresentation is due to systematic exclusion of African–Americans in the jury selection process. Finally, we note that pursuant to the Jury Selection and Service Act, 28 U.S.C. § 1861, *et seq.,* the Central District of Illinois has adopted a "Plan for the Random Selection of Jurors" which provides for the random selection of jurors from the gubernatorial general election voter registration lists supplemented by lists of licensed drivers over the age of 18. The plan specifically prohibits discrimination on the basis of race; not only do we presume that a court will follow its own rules, but the defendant has not alleged that her jury was not selected in conformity with the Jury Selection and Service Act. In addition, this court upheld the use of voter registration lists as a source for jury selection in *United States v. Guy,* 924 F.2d 702, 707 (7th Cir.1991). We therefore reject Donna's contention that she was denied a fair trial because no African–American jurors served on her petite jury.

### CONCLUSION

Donna Hatchett's conviction and sentence are

AFFIRMED.

FLAUM, Circuit Judge, dissenting in part.

I join all but one part of the court's resolution of this case. I would vacate the district court's sentencing decision holding Donna Hatchett accountable for the 10.8 grams of crack cocaine that her daughter Felicia tried to flush down the toilet while the police were searching their house. Guideline § 1B1.3 tells us that the drug-trafficking ventures of others that fall outside the scope of the offense of conviction are only attributable to the defendant if 1) they were part of the same course of conduct or common scheme or plan as the offense of conviction *and* 2) they were reasonably foreseeable acts in furtherance of a jointly undertaken criminal activity. *See* U.S.S.G. § 1B1.3(a)(2) (referencing subsection (a)(1)(B)). (There certainly was not enough evidence to *directly* attribute the crack in the bathroom to Donna's "acts and omissions" under subsection (a)(1)(A). *Cf. United States v. Martinez,* 16 F.3d 202, 208 (7th Cir.1994). The fact that the drugs

were found in her home, commonly sufficient to infer "constructive" possession by a sole resident, loses its significance in light of Felicia's actual possession.) I do not dispute that Donna's assistance in the distribution of 1.1 grams of crack and Felicia's possession (with, most likely, the intent to distribute) of 10.8 grams of crack could be found to be part of the same course of conduct. As the majority describes, Donna, by all indications, worked together with Felicia to consummate the second sale of the evening which, like the first and third, was likely supplied from Felicia's larger store of crack; also relying on the temporal, geographic and human links between the sale and the supply, the district court supportably concluded that these activities were part of the same course of conduct.

This alone, however, does not make Donna responsible for Felicia's crack. A participant in drug activity X is not automatically accountable for drug activity Y even if both activities take place under the umbrella of *somebody's* single drug enterprise. See U.S.S.G. § 1B1.3, application note 5 (explaining that the little fish is only responsible for that part of the big fish's wake in which it swims). Section 1B1.3(a)(1)(B) limits liability to those who can fairly be said to have been committed to the overarching undertaking. That is, "same course of conduct" (or "common scheme or plan") describes a necessary but not sufficient condition for conduct outside of the offense of conviction to be "relevant", as a person can participate in only one part of a single course of conduct without joining in, agreeing to or foreseeing the other parts; the course of conduct still qualifies as "single" because of the spanning activities of the other participants. The upshot of the interplay between subsections (a)(2) and (a)(1) is that a defendant is responsible for

what occurs in a single course of conduct only to the extent that it is single with respect to her, either because of her direct participation in the constituent activities or because those activities were foreseeable aspects of a concerted criminal undertaking that she joined. Step two, then, in ascertaining Donna's attributable drug amount must be a determination of her and Felicia's respective roles in the drug sales conducted out of their house, that is, the nature and scope of their agreed-to venture. Specifically, was Donna a regular "steerer" or agent for Felicia such that the "jointly undertaken criminal activity" was the distribution of Felicia's entire current supply of crack whatever it may have been, *see, e.g., United States v. Copeland,* 902 F.2d 1046, 1049–50 (2nd Cir.1990), or was Donna, even if aware of the breadth of Felicia's drug dealing, merely an episodic intermediary in individual crack sales, *see, e.g., United States v. Mojica,* 984 F.2d 1426, 1445–46 (7th Cir.1993); *United States v. Mitchell,* 964 F.2d 454, 460–61 (5th Cir.1992); *United States v. North,* 900 F.2d 131, 134 (8th Cir.1990); U.S.S.G. § 1B1.3, application note 5; *cf. United States v. Evbuomwan,* 992 F.2d 70, 73–74 (5th Cir.1993)? The district court never proceeded this far in its inquiry (which is alone cause for vacatur, *see United States v. Duarte,* 950 F.2d 1255, 1263 (7th Cir.1991)) and, even if it had, there is little in the record to support the wider view of Donna's complicity. Indeed, after putting to one side pure speculation as to the nature of this mother-daughter relationship and as to the extent to which a parent is necessarily involved in the illicit activities of a grown child living at home, it becomes apparent that substantial evidence of Donna's agreement to join any undertaking beyond the offense of conviction itself is virtually nonexistent.*

---

* After reviewing the record, the majority has collected "overwhelming" evidence (which the district court did not) that supposedly demonstrates Donna's joint drug-dealing undertaking with Felicia of an order *larger* than the offense of conviction. We are certainly *entitled* "to comb the record to determine the facts in our search for justice" and affirm an inadequately explained sentence based on what we find. However, unless the correctness of the sentence is clear, I suggest it is generally a better practice to vacate and remand to the district court to conduct a more comprehensive inquiry, for which it is the

situationally better suited and the institutionally more appropriate forum, or as here, where the basis for the sentence appears lacking, not to endorse the result. Here, in my view, the majority instead has strained to find support for a finding that Donna's drug-dealing agreement with Felicia extended to 10.8 grams of crack that was found solely in Felicia's actual possession and was not the subject of any known transaction in which Donna was involved. The result of the majority's effort is a long list of evidence which purportedly shows Donna's agreement to participate in Felicia's ongoing drug-trafficking

Because assisting a drug seller (even if a relative) in a single transaction establishes at most the prospect of occasional involvement with the seller's trafficking enterprise, more is required to prove a joint undertaking of greater breadth. *Cf., e.g., Mojica,* 984 F.2d at 1446. I therefore respectfully dissent from that portion of the court's opinion holding Donna Hatchett accountable for the additional 10.8 grams of crack cocaine.

activities. I remain unpersuaded. First, the geographic and temporal factors that the majority relies upon are not nearly as informative as the majority implies. For example, the majority is impressed by Donna's "presence in the house" on the night of the arrest and other transactions but at the same time remains unimpressed that Donna was in fact "not present at the first and third transactions", finding this lack of proof as to Donna's greater involvement "irrelevant." Similarly, the "six and one-half hour" time frame of this case was fixed not by any necessary connection between the transactions but by the timing of the agents' buys and the state police's execution of the search warrant. Moreover, what the majority has mainly done is amass cumulative (and sometimes tangential) evidence of Donna's *knowledge* of Felicia's drug dealing and infer her general participation in Felicia's enterprise from little more than this knowledge and her go-between role in the offense of conviction itself. I find such reasoning problematic, especially when an appellate panel reaches to employ it in order to supplement deficient findings of fact. For one thing, a small-time player who assists in single transactions necessarily knows that his big-time contact is a drug dealer. More importantly, Donna's participation in a single drug deal, and her concomitant *knowledge* of Felicia's drug dealing, cannot be dispositive of the scope of Donna's *participation* in Felicia's dealing generally. According to application note 5 of the Guidelines (but not the majority's analysis) there is a significant and important distinction between knowledge of and involvement in a relative's or acquaintance's ongoing drug-trafficking activity, even when the knowledge is cou-

pled with periodic, but nonsystematic involvement. The scope of the defendant's undertaking—not her cohort's—governs sentencing accountability. The only thing that is really established on this record is that Donna played a role in one sale—i.e. that she undertook one deal. While the record does not foreclose *speculation* that when Donna would not decline to accept money for Felicia from Felicia's acquaintances who came by the house to see Felicia, she was actively participating in Felicia's ongoing drug business as opposed to passively accommodating the requests of unexpected visitors for her absent daughter, it does not demonstrate by a preponderance of the evidence that the former is the more likely scenario than the latter. For example, that she knew some of the visitors were drug addicts tells us little about whether they were in fact customers since we do not know if anyone in Felicia's circle was in fact not a drug addict. Furthermore, that Donna moved out of the house for several months if anything indicates, first, how probatively weak her refusal to slam the door in peoples' faces when she was at home actually is and, second, that her role in Felicia's enterprise was at most intermittent. Indeed, despite the majority's general regard for circumstantial evidence (which I share), the totality of events in this case simply does not, to my mind, cast definitive light on the breadth of Donna's participation beyond the offense of conviction. The majority is apparently comfortable in assuming the worst; with the consequences as severe as they are, I am not.