**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Osiel TRUJILLO, Defendant–Appellant.**

No. 01–3889.

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 2002.

Decided June 17, 2002.

Before COFFEY, KANNE, and EVANS, Circuit Judges.

## ORDER

Osiel Trujillo pleaded guilty to one count of conspiracy to possess with intent to distribute in excess of 500 grams of cocaine, 21 U.S.C. §§ 846 and 841(a)(1), and one count of possession with intent to distribute 2925 grams of cocaine, 21 U.S.C. § 841(a)(1). At sentencing the district court determined that Trujillo did not qualify for the safety-valve reduction under U.S.S.G. § 5C.1.2 and sentenced him to concurrent terms of 60 months' imprisonment under the mandatory minimum provision of § 841(b)(1)(B). We affirm.

On March 28, 2001, the FBI arranged a controlled buy of cocaine between a confidential informant (CI) and Trujillo's codefendant, Jesus Becerra. On that date, Trujillo drove to the parking lot of a grocery store in Chicago. He walked over to the car where Becerra and the CI were standing, placed a cereal box and a bag containing cocaine (approximately three kilograms) in the trunk, and removed an orange bag containing money. Trujillo and Becerra were immediately arrested.

After Trujillo was indicted and entered pleas of guilty to one count of conspiracy to possess with intent to distribute cocaine and one count of possession with intent to distribute cocaine, he met with the government in an effort to qualify for the safety-valve reduction. During the meeting Trujillo told the government that on March 28, he spoke to a man he knew as "Luis." Trujillo said he knew Luis to be in the construction business and had asked Luis for work in the past but did not know Luis's last name or address. Trujillo asked Luis for work on that date, and Luis told him that he would pay him $150 if he delivered some packages to Becerra. (Trujillo acknowledged that he knew the packages contained cocaine.) Luis gave Trujillo a physical description of Becerra and told him what Becerra would be wearing. Trujillo further stated that Luis had provided him with a car to deliver the cocaine and instructed him to return with the money.

At the sentencing hearing, Trujillo added that he had known Luis for only three-to-four weeks prior to the March 28 transaction and that he believed that Luis was going to follow him to the parking lot that day to watch him deliver the cocaine. The government told the court that, although it had no information to disprove Trujillo's account directly, Trujillo's assertion that he had no other information defied common sense. According to the government, it seemed implausible that Luis, who hardly knew Trujillo, would trust him to deliver three kilograms of cocaine valued at $45,000 to $60,000. The district court agreed and initially concluded that Trujillo did not qualify for the safety-valve reduction. The court observed: "I just cannot conclude that someone would give someone else three kilograms of cocaine on a first-time basis under the circumstances indicated by Mr. Trujillo without some level of prior trust, some further information here that is lacking."

Trujillo, nevertheless, persisted in arguing that he qualified for the safety-valve reduction. The court once again noted the implausibility of Trujillo's account, stating, "the fundamental problem I have is that this is a first-time transaction." The court then asked the government to put into the record the value of three kilograms of cocaine. According to the government, the

wholesale value was between $15,000 and $20,000 per kilogram. The court again stressed the implausibility of Trujillo's account: "I just cannot believe, based on my life experience, which is considerable unfortunately, especially with this drug, that somebody puts this amount in somebody else's care, custody, control, dominion, without a whole lot more than what we're being told here."

Trujillo responded by arguing that Luis used "safeguards" in his dealings with him, such as following Trujillo to the parking lot and allowing Trujillo to use his car so that he could monitor the transaction. Trujillo additionally theorized that Luis deliberately provided minimal information to protect himself if Trujillo was arrested. The court remained unconvinced, observing that Trujillo's argument was entirely speculative, and denied the safety-valve reduction.

On appeal Trujillo argues that the district court erred in finding him ineligible for the safety-valve reduction under § 5C1.2. *See also* 18 U.S.C. § 3552(f). Under that provision, a court is permitted to impose a sentence within the guidelines imprisonment range without regard to the statutory minimum if five criteria are satisfied. Only the last criterion is at issue here—whether Trujillo provided truthful and complete information concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. A defendant bears the burden of proving his eligibility for the safety-valve reduction, including the requirement of honest and complete disclosure. *United States v. Galbraith*, 200 F.3d 1006, 1016 (7th Cir.2000); *United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996).

Trujillo initially asserts that he was entitled to the safety-valve reduction because the government offered no evidence that the information he provided was untruthful or incomplete. Trujillo seems to think that once he asserted that his disclosure was honest and complete, the burden shifted to the government to prove otherwise. Trujillo is incorrect. The burden is on the defendant at all times to prove that he is entitled to the safety-valve reduction; the burden does not shift to the government, even where, as here, the government challenges the truthfulness or completeness of the disclosure. *Ramirez*, 94 F.3d at 1101.

Trujillo further maintains that there was no evidence before the court to support its finding that he had not provided truthful and complete information to the government. This argument is meritless. In finding that Trujillo's account was implausible, the court pointed out that there was a large quantity of drugs involved in the transaction, that the value of the drugs was significant, and that Luis recruited an almost-complete stranger to carry out the delivery. The court evaluated these facts in the context of its own knowledge of drug cases and common sense, and concluded that Trujillo had not been entirely forthcoming. *See id.* at 1102 (court is entitled to make a "common sense judgment"); *United States v. Hatchett*, 31 F.3d 1411, 1420 (7th Cir.1994) ("Judges in the federal system, whether they are in the trial or appellate system, do not operate in a vacuum, shielded from knowledge of drug operations in the real world."). Based on the evidence before it, the court had sound reasons for discounting Trujillo's credibility.

AFFIRMED.